THE AMERICAN LINEN THREAD CO. *v.* WORTENDYKE *et al.*

When notice of change of firm name is relied upon to exonerate a retiring partner, such change must show that he has withdrawn from the business. A change not indicating this, is insufficient to put dealers upon inquiry.

Accordingly, where one of three brothers, under the firm of Wortendyke Brothers, retired, and, being succeeded by H., the firm was changed to Wortendyke Brothers & Co., — *Held,* that a dealer with the firm was warranted in assuming that all the former partners remained in the business, and, until notice to the contrary, the brother who had retired continued liable.

ACTION in the Supreme Court on a note for $808.04, made May 9, 1859, by "*Wortendyke Bros. & Co.*" to the order of the plaintiffs, six months from date. Defence, that the defendant, David D. A. Wortendyke, was not a partner of the firm who were the makers. The evidence showed that he was not in fact such partner; but the plaintiffs claimed that he was, nevertheless, liable to them upon the note, under the law of partnership. It appeared that, for some time prior to September 1, 1858, three brothers, the defendants, David D. A., Isaac, and John B. Wortendyke, were general partners, trading under

the firm name of Wortendyke Brothers in the city of New York; and that the plaintiffs, a manufacturing corporation at Mechanicsville, had, in the year 1858, and prior to the 1st September, sold to that firm goods on credit at different times, to the amount of more than $600. On said first day of September, the firm was dissolved; and a new firm was formed on the same day, consisting of Isaac and John B. Wortendyke, and of Peter R. Hoffman, the other defendant, who was then first introduced into the concern; and thereafter this new firm transacted the same kind of business, in the same store, under the firm name of Wortendyke Brothers & Co.; and they kept the sign of the former firm over the store. The plaintiffs had no actual notice of the withdrawal of D. D. A. Wortendyke from the firm; but a notice of the dissolution, which disclosed the names of the partners of both firms, was immediately published in two daily papers in New York, and the publication was inserted during four weeks. The plaintiffs continued to furnish goods to the concern on credit after the dissolution; the orders for which were transmitted to them by letters, signed Wortendyke Brothers & Co. The note sued on was given for the price of the goods thus furnished.

The referee, before whom the case was tried, held that David D. A. Wortendyke was liable on the note with the other defendants; but the court, at general term, on his appeal, reversed this judgment, so far as he was implicated, and ordered a new trial as to him; from which order the plaintiffs appealed, giving the usual stipulation. The case was submitted on printed briefs.

*E. F. Bullard,* for the appellants.

*H. P. Allen,* for the respondent.

DENIO, J. The defendant's counsel insists that the new dealing, which formed the consideration of the note sued on, was not with the firm with which the plaintiffs had previously dealt; and that the rule requiring notice, in order to protect a former partner who had ceased to be interested, does not

apply. This argument is not satisfactory; for in every case where a partner has withdrawn, and there is a further dealing with the remaining partners, under such circumstances as to leave the retiring partner responsible, the contract is not between the creditor and the former firm, but it is with a new firm, which the creditor has been led to believe still embraced the partner who has in fact gone out. The bare fact, therefore, of the dissolution of the old firm and the creation of a new one, with which the credit sought to be enforced was had, and which did not embrace one of the old partners, is not conclusive against the plaintiffs. Indeed, it is upon such a state of facts that the question is generally presented. The liability of the defendant depends upon other considerations. Nor does the circumstance that another partner is actually introduced into the firm furnish a conclusive reason against the operation of the rule. If the creditor is not informed of the fact, as where the same firm name is used, and the same kind of business is transacted, and some of the former partners remain, the creditor may still hold a member of the former firm liable though he has retired. Here the same business was carried on at the same place, and a portion of the partners were the same. But a new firm name is introduced; and upon that alone the present question arises. If the change in the name were such as to indicate that the defendant was no longer a partner, there would be no pretence for holding him liable. Cases of that kind are reported. There was a firm of bankers, transacting business under the name of Dickenson, Goodall & Fisher, with whom the plaintiff's testator kept an account. In 1799, Fisher ceased to be a partner, but the plaintiff continued to deposit and draw; and in 1805 the partnership became bankrupt, having a balance in their hands of $2,000 to the credit of the plaintiff's testator. No notice of the retirement of Fisher had been given; but it appeared that immediately after he had withdrawn, the testator was furnished by the bank with printed checks, addressed to Dickenson, Goodall & Co.; and subsequently, when another Dickenson was taken into the firm, the checks were again

changed to Dickenson, Goodall & Dickenson. The testator made use of these checks; a great number of which he filled up, signed and caused to be presented. The question was, whether Fisher remained responsible for the dealings which took place after he had withdrawn; and it was held, that he was not responsible. Lord ELLENBOROUGH said that when the testator had been accustomed to draw upon checks furnished him with the name of Fisher, and others were sent him with the name of Fisher omitted, before using these it became him to inquire what change had really taken place; "and when he did continue to use them, I must presume (he added) that he was perfectly well aware that Fisher had retired, and that he continued to deal with the house upon the credit of the other partners." (*Barfoot* v. *Goodall,* 3 Campb., 147). A case of the same nature was lately decided in the Supreme Court of this State. There was a firm of Hewett & Co., consisting of the defendants, Henry and William R. Hewett. They dissolved, but gave no notice of dissolution. Afterwards the plaintiff sold goods to William R. Hewett, charged them to him and made out the bill in his name, and finally took his individual note for the amount; he declaring, as it was proved, that Henry was still interested with him, and that they were using his individual name in the business for some purpose relating to the collection of debts. It was very correctly decided that, when this new name was introduced, the plaintiff was bound to ascertain to whom he was giving credit; and that the false declarations of William did not affect the question.

These two cases, it seems to me, stand upon the ground that the name of the firm was altered in such a manner as to indicate to those dealing with it that the person sought to be charged with the subsequent dealings had withdrawn. In the first case, the name of Fisher formed a part of the title of the old firm. When a name was subsequently adopted, in which the name of Fisher was omitted, any one would understand that he had ceased to be interested. So in the other case: the name first used showed that, *prima facie*, there was more

than one partner; that Henry and William Hewett were trading under that name. The name subsequently adopted, and under which the dealing in dispute was had, showed, to a common intent, that there was only one person concerned; namely, William R. Hewett. To be sure, the plaintiff was told that Henry was still interested, but that was false; and Henry was not responsible for the deception. If the plaintiff was deceived by that, it was his own misfortune. But the defendant was responsible that the business should not be continued under a name calculated to deceive the world or former dealers with them; and he could not be charged with neglecting any necessary precaution, when the name used in the subsequent dealings was such as to indicate that he was no longer concerned. I will now mention a case where, although there was, in effect, a dissolution, and the organization of another firm with a different name, the retiring partner was held liable, because the change of name did not indicate that he was the partner going out. (*Howe* v. *Thayer*, 17 Pick., 91.) The defendants were Thayer and Fellows, who, together with one Colton, were claimed to have been in partnership until June 23, 1830, when a dissolution took place, and the business, which seems to have been the carrying on of a boarding school, was continued by Fellows and one Newton. The plaintiff had furnished provisions for the use of the institution, both before and after the change; and the question was, whether Thayer was liable for those furnished after he had ceased to be interested. Before the change, the firm name of Colton & Fellows was used; and afterwards, that of Newton & Fellows was adopted; and during the whole time, the name of The Mount Pleasant Institution was also employed to some extent in their dealings. It will be seen that the name of Thayer, whose liability was alone in contest, was not found in either title; but the change from Colton & Fellows to Newton & Fellows showed, *prima facie*, that Colton had withdrawn, and that Newton had been taken in. Hence, the defendant's point was, that if the plaintiff knew that Colton had ceased to be a member of the firm, it was in law a notice to him of the dissolu-

tion of the partnership as to all its members.; that, by the withdrawal of one partner, the identity of the partnership was destroyed; and that if the plaintiff doubted the responsibility of the new firm, unless Thayer was liable for their contracts, he should have inquired whether he continued to be a member. The charge to the jury was, that the change of the firm from Colton & Fellows to Newton & Fellows had no tendency to prove that Thayer had ceased to be a partner, if it were shown that before that time he was a partner; but if the plaintiff knew of the change, and knew that after that, Newton & Fellows only were answerable, the plaintiff could not recover for the supplies subsequently furnished. On a review of this charge, upon exceptions, after a verdict for the plaintiff, it was held to be correct. The court, by Chief Justice SHAW, who drew up the opinion, said: "When a business is carried on by three or more as partners, and one withdraws, or one is added, or both, and notice thereof given, and the business is carried on as before, those as to whom no notice is given must be presumed to hold the same relation to the concern that they did before; and such change furnishes no presumption that the others have ceased to be partners. If the plaintiff knew that Colton had withdrawn, and ceased to be a partner, it was not in law a notice to the plaintiff of the dissolution of the partnership, as to all its members, to the effect contended for, and to the purpose for which that proposition was advanced, namely, to exempt the other members from liability; or if it was, in a certain sense, evidence and notice of the dissolution of the same identical partnership that existed before, it was at the same time evidence and notice of the formation of a new partnership among all the remaining members of the firm to carry on the same business, holding the same relation to its customers and the public, with the single exception implied by the fact that the retiring partner will be no longer liable for new contracts, and that the acceding partner will thenceforward become liable." He added, that "the withdrawal of one partner other than the defendant, Thayer, and the accession of another, the business in other respects going

on as before, was not evidence from which a jury should infer a dissolution in respect to the defendant, Thayer; but if he knew that by the new arrangement Newton & Fellows alone were to compose the partnership, before he furnished the supplies, the defendant, Thayer, would not be responsible." None of these cases can be regarded strictly as authority; but being the judgments of respectable courts, acting upon the principles of the common law, we should prefer to follow rather than depart from them, unless they seem inconsistent with sound reason or with legal analogies. The proposition which they all tend to establish, and which is distinctly laid down in the last, is, that when a notice of a change of firm name is relied on to exonerate one who has been a partner, such change must show that he has withdrawn from the business; and any change which does not indicate that, does not put dealers with the concern upon inquiry. They may safely assume, until they have notice to the contrary, that all the former partners not apparently affected by the change of name yet remain in the business. There is certainly some force in the argument that, where any change is made in the members of a copartnership, the identity of the commercial society is destroyed; and that the arrangement which takes its place is substantially a new society; and that parties proposing to deal with it must ascertain who its members are, in the same manner as though it had no connection with any previous arrangement. But I think that position would be likely often to sacrifice substantial justice to considerations of form. The present case affords a pretty striking instance of the superior equity of the rule laid down by Chief Justice Shaw. The three brothers Wortendyke were in partnership, and the plaintiff may be supposed to have known of whom that firm was composed. The name which they gave it indicated that it was composed of several persons of that name, who were brothers. As to that, there was no change effected by the new name: it was still Wortendyke Brothers, and something more. The added words, standing for *and company*, do not carry the idea that the brothers, who were up to that time concerned toge-

American Linen Thread Company *v.* Wortendyke.

ther, had separated, or that any of them had withdrawn; but, rather, that there had been an addition of one or more persons to the concern, who would not have been indicated by the former title. , This, I think, is the inference which nearly every person would draw from the change of name. The plaintiff, it is true, might have acted upon the mere formal view of the matter, and have made inquiries; and the partners might also have given personal notice of the character of the change to all their correspondents. In the absence of that precaution, I think it more just to impute to the plaintiff only a knowledge of the change which the new firm name indicates; namely, that a new partner, or new partners, had been taken in; the former partners continuing to be interested as before.

These views, if concurred in, will lead to the reversal of the order for a new trial, and for judgment absolute in favor of the plaintiffs on the report of the referee.

DAVIES, WRIGHT, GOULD and ALLEN, Js., concurred.

SUTHERLAND, J., (dissenting.) The defendant, David D. A. Wortendyke, never was a member of the firm of Wortendyke Brothers & Co. This fact is conceded. The note on which this action was brought was made by the firm of Wortendyke Brothers & Co., for a debt contracted by that firm. This is also conceded. It follows, that the plaintiffs cannot recover on the note against David D. A. Wortendyke, on the ground that he was in fact a member of the firm of Wortendyke Brothers & Co., when the note was made, and was therefore bound by it. In other words, it follows from the conceded facts of the case that the plaintiffs cannot recover against the defendant, David D. A. Wortendyke, on the note, on the ground that the note was made by him and the other defendants who did compose the firm of Wortendyke Brothers & Co.

But the plaintiffs insist that the defendant, David D. A. Wortendyke, is estopped from setting up, or saying, that he was not in fact a member of the firm of Wortendyke Brothers & Co., when the note was made, or when the goods for which the note was given were sold to that firm.

There is no evidence whatever in the case that the defendant, David D. A. Wortendyke, ever at any time represented himself to be a member of the firm of Wortendyke Brothers & Co., or that he ever held himself out to the plaintiffs, by his acts or declarations, to be a member of that firm, otherwise than by omitting to notify the plaintiffs that he was not a member of that firm. The plaintiffs rely upon his omission or neglect to give this notice as estopping him from availing himself of the defence that he was not, in fact, a member of the firm of Wortendyke Brothers & Co.

The conceded facts which present this question of estoppel are these: Previous to September 1, 1858, there was a firm of "Wortendyke Brothers," composed of the defendants, David D. A., Isaac, and John B. Wortendyke, who were brothers. On the 1st September, 1858, this firm was dissolved, and a new firm formed, composed of Isaac and John B. Wortendyke, and one Peter R. Hoffman, under the firm name of "Wortendyke Brothers & Co." The plaintiffs had dealt with the old firm, and knew of the change in the partnership name, and that Peter R. Hoffman had become a member of the new firm previous to the making of the note on which the action was brought, and previous to the sale of the goods to the new firm for which the note was given.

The plaintiffs insist that notice of the change in the firm name, and of the fact that Hoffman had become a member of the new firm, was not notice to them of the fact that the defendant, David D. A. Wortendyke, had retired from the firm, and had ceased to be a member of it; that they had a right to believe, in the absence of such notice, that he continued to be and was a member of the new firm, and to trust the new firm on the ground that he was such member.

It can hardly be said, I think, that the notice or knowledge of the change in the firm name, and of the fact that Hoffman had become a member of the new firm, was notice to the plaintiffs that David D. A. Wortendyke was not a member of the new firm; but I think the question in the case is this: Under the circumstances, was it the duty of David D. A. Worten-

dyke to notify the plaintiffs that he had retired from the firm; or was the notice or knowledge which the plaintiffs had of the change in the firm name, and of the fact that Hoffman had become a member of the new firm, sufficient to put the plaintiffs upon the inquiry, and to have made it their duty to inquire, as to who composed the new firm, and whether David D. A. Wortendyke was or was not a member of the new firm?

· I am not aware of any case in which it has been held that mere silence or omission to give notice, under such circumstances, operated as an estoppel. I do not see upon what principle it can be so held.

I think it was the duty of the plaintiffs, under the circumstances, to inquire whether David D. A. Wortendyke was or was not a member of the new firm, before they trusted the new firm on the ground that he was a member. Their knowledge of the change in the firm name alone was, I think, sufficient to have put them on this inquiry. This appears to have been held in the case of *Kirby* v. *Hewitt* (26 Barb., 607).

My conclusion is, that the order of the Supreme Court granting a new trial as to the respondent should be affirmed with costs.

SMITH, J., also dissented.

Judgment reversed, and judgment absolute for plaintiff.