CHARLES G. MARTIN and WILLIAM C. MARTIN,. Appellants, *v.* HATTIE W. BLISS, Respondent.

*Real estate broker — acting in bad faith, is not entitled to any commission.*

Where a broker, employed to sell real estate, instead of using his best efforts to further the interest of his principal, attempts to induce his principal to take less than the price fixed by her, although such price has already been accepted by a proposed purchaser, the broker is not entitled to recover any commissions for his services.

Appeal by the plaintiffs from a judgment in favor of the defendant, entered in the office of the clerk of the county of New York on the 26th day of November, 1889, dismissing the plaintiffs' complaint, with costs, after a trial before the court and a jury at the New York Circuit.

*C. N. Bovee, Jr.,* for the appellants.

*L. R. Beckley,* for the respondent.

Van Brunt, P. J.:

The material facts proved upon the trial were as follows: The plaintiffs in this action were real estate brokers, and the defendant was the owner of premises No. 31 West Thirty-second street, in this city.

Early in May, 1886, the plaintiff Charles G. Martin called at the house of defendant and asked her if she wanted to sell her house, and told her that he had a party that wanted to buy and would give a good price for the house. She said that she would not sell it. The plaintiff told her that if she changed her mind he would be glad to hear from her.

On the twelfth of May, in consequence of a message received, Mr. Martin called upon the defendant again, who told him that she had concluded to sell her house if she could get her price, which was $50,000. Mr. Martin then told her that he had just left a gentleman at his office, a Dr. Bozeman, whom he thought would buy her house, but he did not know whether he would give $50,000 for it, but that he would go and see. The defendant replied that she did not want anybody brought there unless he was willing to give $50,000, because that was the lowest that she would take.

When Mr. Martin returned to his office Dr. Bozeman had left, and he left word with his son, the plaintiff, William C. Martin, when the doctor came in, to take him to see the house. On the same day Mr. William C. Martin went with Dr. Bozeman to see the house. They were shown the house by the defendant. Mr. William C. Martin asked her if any less offer than $50,000 would be accepted for the house; her reply was, "Not one penny; I will sell it for $50,000, and no less." After some further conversation, Dr. Bozeman left, Mr. William C. Martin stating to him that he would be around to see him in a few minutes.

Mr. Martin then, after vainly striving to get the defendant to take less for her house, said to her, "If I can get you $50,000 from the doctor will you pay me a $1,000?" She said, "Why, no; why should I pay you a thousand dollars?" Mr. Martin asked her if she would pay him $750, and she refused; finally, she said, I will give you a check for $600 if you can sell the house for me for $50,000. Mr. Martin then left her, stating that he would go and see the doctor, and if he could get an offer out of him he would be back in half an hour. Mr. Martin then saw the doctor, who told him to go back and close the bargain, that is, buy the house at $50,000.

Mr. Martin then went back to see the defendant and said to her that he could offer $45,000 or $46,000 or $47,000, a little less than $50,000 spot cash for her house if she would throw in the coal in the house and some other things. She replied that it was a waste of time to talk less than $50,000, and that she would not throw in the coal, that she would include the other things. Mr. Martin then asked her if she would take $48,000. She said no. Forty-nine thousand dollars cash? She refused, and finding that he could not beat her down in her price, Mr. Martin finally said, Very well, we will take the house at $50,000. She replied: "Very well; I am glad I had no more trouble about it."

It was arranged that the defendant should sign the contract at ten o'clock the next morning. The next morning Mr. Martin called with a contract drawn up for the defendant to sign, which she refused to do, and the defendant having refused to complete the contract, the plaintiffs brought this action to recover the $600 which it is claimed was due because of their production of a customer willing to pay $50,000 for the house of the defendant.

The only relations existing between Dr. Bozeman and the plaintiffs were that they had called his attention to the house in question and invited him to go to the house and see it. They were not working for Dr. Bozeman, expecting a commission, and were not his employees. Upon this state of facts the complaint was dismissed, and from the judgment thereupon entered this appeal is taken.

In order to entitle a broker to his compensation it is not necessary that a conveyance of the property intrusted to him for sale should actually be consummated between his employer and customer. All that is necessary for a broker to show is that he has been employed by the owner, and that he has produced to his principal a customer who is willing to purchase upon the terms fixed by the principal, and who is able to comply with those terms. This being done a broker is entitled to his compensation under ordinary circumstances. In the case at bar the broker shows employment and the production of a customer, able and willing to comply with the terms fixed by the principal. It is claimed upon the part of the defendant that, notwithstanding the existence of these facts, the broker is not entitled to recover, because in the course of his employment he has been guilty of bad faith towards his principal; that, instead of using his best efforts to further the interests of his principal, the broker in the case at bar worked against them, used his utmost efforts to induce the defendant to take less for her house than the price fixed by her, when the defendant's terms had already been accepted by the proposed customer.

The plaintiffs claim that this defense is not available because not pleaded, and in support of the proposition cite the case of *Duryee* v. *Lester* (75 N. Y., 442), in which it was held that in that case the question of double employment could not be considered because no such objection was taken in the court below; and it is further stated that the matter properly should have been pleaded.

In the case at bar no question was raised in the court below. The proof as to the bad faith of the broker was received without objection. No question as to the sufficiency of the answer was suggested, and it is now too late to raise that objection, as in order to support the judgment the court would now, if necessary, direct the pleadings to conform to the proof.

The plaintiffs further urge that there was no bad faith upon their

part because the defendant knew that they were employed by Dr. Bozeman.

Even if the plaintiffs had been employed by Dr. Bozeman, which the proof shows they were not, yet they owed some duty to the defendant. They knew when they were trying to beat down the defendant in her price that Dr. Bozeman had accepted the defendant's terms, that he was not only willing to pay the price asked, but anxious to get the house upon those terms. They had his directions to close the bargain, the direction to do the best they could for him given by Dr. Bozeman evidently relating only to the throwing into the bargain of the coal and other things.

The plaintiffs, however, instead of stating to the defendant that Dr. Bozeman had accepted her proposition, endeavored to beat her down in her price and to get her to take less, fraudulently concealing from her the fact that Dr. Bozeman had acceded to her terms. Certainly some good faith is required as between employer and employee. An agent owes some duties to his principal, and because a man is a real estate broker he is not relieved from the ordinary principles governing the relation of principal and agent.

It is undoubtedly true that a broker may in some instances act for two parties where they have conflicting interests, as in the case of exchange of property, which was the fact in the cases cited by appellants' counsel (*Rowe* v. *Stevens*, 53 N. Y., 621; *Jarvis* v. *Schaefer*, 105 id., 289), but even then he is bound to fair dealing; and it has never yet been decided, even in such a case, that a broker could conceal from one principal the acceptance of an offer by the other, and endeavor, with knowledge of that acceptance, to get lower terms from that principal and yet recover his commission as compensation for services rendered. But the plaintiffs in this action were not employed by Dr. Bozeman. They themselves say they were not. The relation of employer and employee, principal and agent, did not exist between them. Dr. Bozeman says he wanted a house, and at the plaintiffs' request went to see the house in question. The plaintiffs say that they expected no pay from Dr. Bozeman. yet they seem to have been more zealous for his interests than for those of their principal.

The plaintiffs, therefore, were the agents of the defendant, and of the defendant only, and owed to her their best endeavors. This

she was entitled to receive, and unless they gave them to her they have not fulfilled their obligations to her?

That she did not receive their best efforts is conceded, as after they knew that Dr. Bozeman had accepted her offer, they endeavored to beat her down in her price. This clearly was a fraudulent act upon their part, and simply because they did not succeed in cheating their employer, having used their best efforts to do so, can it be said that they have fulfilled their obligations to her?

The servant who tries to cheat and defraud his employer, but fails, stands in the same category as the servant who succeeds. The act is the same whether successful or not.

It seems to me that a court cannot countenance such a breach of fidelity as the facts of this case exhibit; if it does, it would seem to hold that, as between employer and employee, good faith and honest service are not required to entitle the employee to compensation which was supposed to depend upon his fidelity to the interests of his employer.

The judgment appealed from should be affirmed, with costs.

BARRETT and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.