MAX FRANKEL, RESPONDENT, v. JOHN B. WATHEN, APPELLANT, IMPLEADED WITH OTHERS.

*Principal and agent — what disclosure required of an agent acting for both the parties to a bargain — commissions of an agent — account stated — when the minds of a principal and agent do not meet as to the latter's commissions.*

In an action brought to recover commissions alleged to have been earned by the sale of whiskies, it appeared that the plaintiff, while acting as the general agent of the defendants in the sale of whiskies, was requested by the firm of Cook & Bernheimer to negotiate the exchange of a clay farm, owned by them, for whiskies. The plaintiff called the attention of the defendants to the farm,

and an exchange was finally effected through his agency. The whisky was thereupon delivered and the defendants agreed to allow the plaintiff $1,000 for his commissions in this transaction, which amount was charged on the plaintiff's books to the defendants' firm, and was included in an account rendered by him, which was received without objection by the defendants, and the amount thereof paid to the plaintiff by a remittance made prior to November 1, 1886.

It appeared that the plaintiff had also obtained a commission of $250 from Cook & Bernheimer for selling the farm, a fact which he had concealed from the defendants.

*Held,* that although an account stated is *prima facie* evidence, and will be deemed conclusive evidence of its correctness, between the parties, unless some fraud, mistake, omission or inaccuracy is shown, yet the converse of the rule is equally well established, namely, that if fraud be shown, the account loses its conclusive character and is subject to re-examination.

Where an agent is acting in a double capacity, representing two persons, for each of whom he is expected to do his best, a knowledge by the principals of his duplicate character should be established, not by mere inference, but by evidence of a full disclosure or positive proof of knowledge, so that the seller or the buyer, as the case may be, may be advised of the exact relation of the agent to the other parties to the negotiations.

Where a principal authorizes his agent, by letter, to sell certain property on condition that he waits for a time for his commissions, and the agent writes to his principal refusing to wait for his commissions, and the sale is made, the principal may enforce the condition as to the time of payment of the commissions.

APPEAL by the defendant John B. Wathen from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of November, 1889, after a trial before a referee, who reported in favor of the plaintiff.

*J. L. Bennett,* for the appellant.

*Ferdinand Kurzman,* for the respondent.

BRADY, J. :

This action was brought to recover commissions earned by the sale of whiskies, and also for services in superintending a farm belonging to the defendants, and for various sums of money laid out and disbursed for them and loaned and advanced to them, all of which they promised to pay. The plaintiff also alleged that from time to time he had rendered an account to the defendants, copies of which are annexed to the complaint, upon which the defendants made various payments. He also alleges that the items charged in the account are true and correct in all respects.

The defendants denied any knowledge or information sufficient to form a belief that any of the work, labor or services were rendered for J. B. Wathen & Bro., or for the defendants in this action, or that any of the sums disbursed were expended other than as alleged or mentioned in the answer for the defendants or for J. B. Wathen Bros. & Co. or J. B. Wathen & Bro., but, on the contrary, alleged, on information and belief, that the liquors mentioned in the complaint were the property of and belonged to a corporation duly organized under the laws of the State of Kentucky, and known by the corporate name of the J. B. Wathen & Bro. Co.; and that all the services rendered by the plaintiff, mentioned or referred to in the complaint, were done or performed for the corporation, and that all the moneys expended by the plaintiff were expended for and in doing business for the said corporation, and not otherwise, as the plaintiff at all times well knew; but whether all the services for which charge is made or what part thereof were rendered, or whether, or what part of the disbursements therein were charged, the defendants denied any knowledge or information sufficient to form a belief. The defendants, further answering, alleged, as a separate defense, on information and belief, that the claims and demands of the plaintiff, and all of them set out in the complaint, against the defendants and against the corporation had been fully paid. The defendants, further answering, set up counter-claims, on information and belief, arising from money advanced to the plaintiff and for property of the defendants in the hands of the plaintiff; and the whole answer, from supposed inconsistencies, is criticised by the learned counsel for the respondent as an old device, suggestive of the hunter so aiming his rifle as to hit the animal in the bushes if it was a deer and to miss it if it was a calf.

The question presented *in limine*, however, is whether the services were rendered to the firm of John B. Wathen & Bro., or the corporation named John B. Wathen & Bro. Co. It is conceded that there was a firm in Louisville designated J. B. Wathen & Bros., which began business in 1875 and which was continued until 1885, when it is insisted it was merged in a corporation under the laws of the State of Kentucky, known by the corporate name of the J. B. Wathen & Bro. Co.

There does not seem to be any doubt that the asserted change took place, but the firm and the corporation, nevertheless, seem to have gone along *pari passu* together, so far, at least, as the plaintiff is concerned, a circumstance which arose doubtless, in part at least, from the fact that J. B. Wathen was the president of the company, inasmuch as he was not advised of the merger asserted, and which it may be said actually took place. His contract was made with the firm, and not with the corporation, and was so continued, the evidence to establish which is abundant, and, therefore, justifies the finding of the referee, although there are some facts and circumstances, perhaps, bearing upon the asserted knowledge of the plaintiff that this change had taken place, but not at all sufficient to overcome the correspondence and other facts and circumstances proven and employed for the purpose of establishing the plaintiff's ignorance of the change. And it may be said that a perusal of the testimony creates the impression that the affairs of the corporation were so conducted, Mr. J. B. Wathen being the principal active person in both; that the firm was continued as a distinct organization in its relations with the plaintiff. The referee has so found and invoked, on behalf of the plaintiff, the proposition well established by authority, that the dissolution of a firm, its discontinuance, or any change in its character, will not affect persons dealing with the copartnership, unless actual notice be given. (See Bates on Partnership, §§ 890, 611; *National Shoe and Leather Bank* v. *Herz*, 89 N. Y., 629; *American Linen Thread Co.* v. *Wortendyke*, 24 id., 550.) On this subject the referee, in speaking of certain letters that were signed J. B. Wathen & Bro. Co., and which he justly says refer to a corporation of that name, observed as follows: " The striking fact, however, appears, that throughout this long correspondence, the defendant John B. Wathen gave no distinct notice to the plaintiff of the organization of a corporation or of any change in his business, nor direction of any kind to charge any other concern or corporation, except what might be inferred from the signing of letters, and, in May, 1887, the denial that Mr. Bond was vice-president of the company." There was, in other words, no such proof on the subject as would necessarily require the plaintiff to look upon his employers as others than the members of the firm, and thus, by a proper legal notification, be required to sever his connection with it.

The referee further says: "It must be found as a matter of fact that the defendant Wathen represented himself to be engaged in business under a firm name; that such representation was made in such a manner as to induce the plaintiff to rely upon it; the plaintiff did rely upon it, and, as a conclusion from the facts, it must be held that he is estopped from denying the copartnership." This, however, is a mere reiteration of the fact in a different form that the plaintiff was not aware of the change which was made, had received no legal notice of it, and, therefore, was not concluded by it, or his right in any way affected by it to the compensation for the services rendered to the firm, as he understood it to exist.

The defendants have made a gallant struggle against the effect of the evidence and the rule of law suggested, but in vain. On that issue the referee must be sustained.

The general liability of the defendants having been thus established, the referee proceeded to examine the claims of the plaintiff which were disputed, namely, the commission for the sale of 2,500 barrels of whisky to Cook & Bernheimer in exchange for a clay farm owned by them, the alleged sales of "Criterion" whisky in Philadelphia by the plaintiff, the compensation for his services in managing the farm mentioned, and commissions for the sale of 1,000 barrels of whisky to Cook & Bernheimer in exchange for the yacht "Sea Witch."

As to the first, namely, the sale of 2,500 barrels of whisky in exchange for a farm, it appears that the plaintiff, while acting as the general agent of the defendants for the sale of their brands of whiskies within the limits prescribed, was requested by Cook & Bernheimer to negotiate the exchange of a clay farm owned by them for whisky. He called the attention of the defendants to the farm, and the exchange was finally effected through his agency. The whisky was thereupon delivered, and the defendants agreed to allow the plaintiff $1,000 for his commission in this transaction, which amount was charged on the plaintiff's books to the defendant's firm and included in an account rendered by him, and which was received without objection by the defendants, and the amount thereof paid to the plaintiff by the remittance made prior to November 1, 1886. The correctness of the item was not disputed until the trial of the action, although the defendant insisted that the corporation of

J. B. Wathen & Bro. Co., and not he, was subject to the liability, if any. It was disputed upon the ground that the plaintiff had obtained a commission of $250 from Cook & Berheimer for selling the farm, a fact which he concealed, and was, therefore, guilty of such misconduct and fraud as to forfeit his rights to any commission from the defendant, who thus, even if there was an account stated, established his right to open it.

It is true that an account stated is *prima facie* evidence, and will be deemed conclusive between the parties unless some fraud, mistake, omission or inaccuracy is shown; but the converse of the rule is equally well established, namely, that if fraud be shown the account loses its conclusive character and is subject to re-examination and a contest. The learned referee, however, arrived at the conclusion that the defendant knew, whilst the transaction was going on in reference to the farm, that the plaintiff was also acting as the agent of Cook and Bernheimer, and was, therefore, not subject to the rule clearly stated in the case of *Gardner* v. *Ogden* (22 N. Y., 347), that where a person stands in the inconsistent relations of both buyer and seller, there are dangers, and it is not relevant to say that it is impossible there could be any in a particular case. And, as said by Lord CRANWORTH and quoted in that case: "An agent has duties to discharge of a fiduciary character toward his principal; and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this rule adhered to, that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into." And, further: "It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may even, at the time, have been better. But still so inflexible is the rule that no inquiry on that subject is permitted."

In the case of *Claflin* v. *The Farmers and Citizens' Bank* (25 N. Y., 297) Judge SMITH says: "The rule is applicable to all persons standing in a trust relation. The principal is entitled to the exercise in his behalf of all the skill, industry and ability of his agent,

and to his intensest fidelity to his trusts." The same question was discussed in *Murray* v. *Beard* (102 N. Y., 508), by Justice Folger, who, in the course of his opinion, said : "An agent is held to *uberrima fides* in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of employment, it amounts to such a fraud upon the principal as to forfeit any right to compensation for services." The question in such cases does not, therefore, turn upon the point of whether there is any intention to cheat or not, but upon the obligation arising from the fiduciary relations of the parties to make a frank and full disclosure. (Story's Eq. Jur., § 316 ; see, also, *Martin* v. *Bliss*, 57 Hun, 157, a distinctive case on the subject.)

The rule governing the subject suggested is, therefore, so strict and so vigorous, so sensible and so just, that when the person is acting in the double capacity of representing two persons, for each of whom he is expected to do his best, a knowledge of the duplicate character should be established, not upon mere inference, but upon a full disclosure or positive proof of knowledge, so that the seller or the buyer, as the case may be, may be advised of the exact relation of the agent to the parties conducting the negotiation. There is no such evidence in this case. At most, there is a mere suggestion that Cook & Bernheimer relied upon the plaintiff's judgment as to the selection of the whisky which was to be given for the farm. This, said the learned referee, "is some evidence of the fact that Mr. Frankel was employed by Mr. Cook to negotiate the exchange, and that Cook & Bernheimer relied upon his judgment and skill in the transaction." There is no pretense that there is anything more than an intimation, inferentially arising, that the defendants knew that Cook & Bernheimer were to compensate the plaintiff for his services in securing the exchange. For these reasons it is thought that the referee was in error in all his views affecting the commission of a thousand dollars, which was to have been paid to the plaintiff for the exchange which has just been considered. It should have been rejected in every aspect in which it may be legally considered.

An examination of the case has resulted in the conclusion that the commission on the sales of "Criterion" whiskies in Philadelphia,

the facts and circumstances relating to which were elaborately con-sidered by the referee, should be allowed as found by him. The third disputed item, namely, the claim for services in managing the farm, was found against the plaintiff, and, therefore, requires no consideration. The last item in dispute, namely, the commissions for the sale of 1,000 barrels of whisky for Cook & Bernheimer, in exchange for the yacht " Sea Witch," allowance of which was made by the referee, had not been earned at the time this action was commenced. On the subject of this exchange, which embraced not only the yacht mentioned but Southern lands, a correspondence had taken place between the parties' which resulted in Mr. Wathen's writing a letter to the plaintiff in relation thereto, and in which he said : " If you make a trade on the basis of a thousand barrels, we should expect you to wait for your commissions until we can realize something on the yacht." That letter was dated the 15th of November, 1886, and written from Louisville, Kentucky. On the eighteenth of November the plaintiff wrote to the defendant Wathen stating, " Yours of the 15th to hand and noted," and it contains a statement of the proposition as it then stood, and further refers to the special arrangement in reference to the commission, saying : " In your letter you say that, in case the trade is consummated for only one thousand barrels, you will expect me to wait for my commission until the yacht is disposed of. Now, you know very well that I am not very particular. It was not until some time after the completion of last year's contracts that I commenced drawing on account of my commission, and, in fact, have not drawn it all yet, although on several occasions I required the money in my business; but I certainly hold that my commissions are due me immediately on the completion of contracts, although I may not always wish to draw on you for same at once, especially when you require funds yourself."

The learned referee in dealing with this question says the minds of the parties did not meet, and he, therefore, fails to find that the sale was effected on the express condition that the payment of com-mission should be deferred until the yacht was disposed of. It does not appear that the sale which was made was authorized by the defendants in any other mode than that suggested by the letter of November fifteenth, and which, in the ordinary course of mail, would have reached New York on the seventeenth of November,

two days after it was written, and which was, in fact, received by the plaintiff before the sale took place.

The testimony in regard to the transaction presents some features perhaps worthy of comment, but which it is not needful here to indulge in, the referee having placed his decision upon the proposition, as suggested, that the minds of the parties did not meet. The mind of the defendant must prevail here, and the letter containing the condition having been received prior to the sale, controls the claim of the plaintiff and limits his right of action for the commissions to the time of the sale of the " Sea Witch" or other disposition of her was made. His right of action did not accrue until that event occurred, unless the defendant acted collusively, or designedly delayed the sale or disposition of the vessel beyond a reasonable time.

The result of this review is, therefore, that the judgment appealed from must be modified by striking out the recoveries of the commissions allowed for selling the farm and the " Sea Witch," and affirmed for the balance, without costs to either party.

DANIELS, J.:

I concur except in the result. There should be a new trial unless the plaintiff shall stipulate to deduct the items concluded to have been erroneously allowed by the referee. And in case of the service of such stipulation then the judgment as thereby modified should be affirmed, without costs of the appeal.

VAN BRUNT, P. J.:

I concur in modification suggested by Judge DANIELS.

Judgment modified, as stated in opinion, and as modified affirmed, without costs of the appeal.