## MULLEN v. BOWER.

[No. 2,739.    Filed May 9, 1899.]

BROKERS.—*Commissions.—Complaint.*—A complaint by a real estate agent for brokerage commissions, alleging that he found a purchaser for the lands, is sufficient, where by the agreement plaintiff was to secure a purchaser or effect a trade for other lands. *pp.295-297.*

INSTRUCTIONS.—*Repetition.—Practice.*—When the court has once stated to the jury a legal proposition, clearly and fully, it should not repeat it.    *pp. 297, 298.*

BROKERS.—*Commissions.—Instructions.*—An instruction in an action by a real estate agent for brokerage commissions to the effect that if defendant employed plaintiff to make sale of his farm, and if plaintiff found a purchaser ready, able and willing to buy the farm

Mullen *v.* Bower.

at the price and upon the terms fixed, and if defendant sold the land to such purchaser for a less sum he would be liable to plaintiff for the commission agreed upon, if any, correctly states the law. *pp. 298, 299.*

INSTRUCTIONS.—*Incomplete Instruction.—Brokers.—Commission.*—In the trial of an action brought by a real estate broker for commissions, there was evidence introduced to the effect that the broker through a subagent introduced a purchaser to the seller; that the purchaser said he would not purchase of an agent, and desired to purchase direct from the owner; that the seller thought he was selling to an independent purchaser, so far as the broker was concerned, and offered to sell at a price less than that fixed with the broker, and that the subagent knew that the seller was laboring under such belief and did not inform him that the sale was being made by such broker, and that the purchaser had offered him a greater price. There was evidence also that the seller knew that the subagent was acting for the broker. *Held*, that the question whether the subagent concealed such facts from the seller should have been submitted to the jury by a proper instruction, where such instruction was tendered. *pp. 298-303.*

From the Henry Circuit Court. *Reversed.*

*M. E. Forkner* and *W. E. Jeffry*, for appellant.

*Nation & Beard* and *Bundy & Morris*, for appellee.

ROBINSON, J.—Appellee recovered a judgment for brokerage commissions. The errors assigned question the sufficiency of the two paragraphs of complaint as against a demurrer, and the overruling of appellant's motion for a new trial.

Appellee averred in the first paragraph of complaint that he was a real estate and loan agent, and was employed by appellant to sell or trade some land, who agreed that if he would secure a purchaser, or effect a good trade for other lands, he would pay appellee a reasonable sum for his services; that appellee found a purchaser; that a reasonable fee is $300, which is due and unpaid, though often requested; that the services were rendered at appellant's special instance and request.

It is argued that this paragraph is insufficient because it does not aver that appellee found a purchaser ready, able,

and willing to buy; who the purchaser was, or whether he agreed to take the land upon the terms given appellee by appellant, or whether the purchaser and appellant agreed upon the terms between themselves; nor does it aver that appellee introduced the purchaser to appellant, or ever notified appellant that he had a man who desired to purchase the land, or that appellee effected any sale. By the agreement averred, appellee was to secure a purchaser or effect a trade for other lands. He avers that he found a purchaser. This is an averment that he did what he had agreed to do. So far as the complaint is concerned this averment is sufficient. The words used in a pleading are to be taken in their ordinary signification and meaning. The meaning of the word "purchaser" is one who purchases, and this meaning is to be kept in view when construing the averment that appellee found a purchaser. This was the agreement of the parties, and appellee avers that he did what he agreed to do. He undertakes by this averment to show that the purchaser found by him purchased the property. The language used by the court in *Platt* v. *Johr*, 9 Ind. App. 58, was used with reference to a contract found by the jury and disclosed by the evidence, and not with reference to an averment in a complaint. In that case the court said: "A real estate broker may be employed simply to find a purchaser either generally or upon certain terms of payment, or he may be required by the terms of his employment to go farther and procure from the purchaser a contract that is valid and binding between him and the seller." In the case at bar, by the averments of this paragraph, appellee was simply to find a purchaser generally.

In the second paragraph, by a special contract, appellee was to sell the land for a named sum; that he procured a purchaser for the price in the person of one Lewis; that appellant sold the land to Lewis for the sum named, and made and delivered to him a deed; that appellant refused to pay the commission which is due and unpaid. It is true this paragraph speaks of "said land" in the first instance, and refer-

ence may have been intended to the first paragraph.    But it was not necessary that the land should be described, or that reference should be had to any particular land.    Recovery is sought for services for the sale of land.    It can not be said that the second paragraph depends upon the first for its support.    The rule is well settled that in such cases the owner of the land has still the right to make sale of the land, but this paragraph avers that appellee found a purchaser, and that appellant sold the land to that purchaser.    The demurrer was properly overruled.

With the general verdict the jury returned answers to interrogatories to the effect that appellant employed appellee to find him a purchaser for his farm; that appellee employed John W. Williams to find for him a purchaser; that Williams found a purchaser for the farm, and introduced him to appellant; that appellant sold the farm to the purchaser found and introduced by Williams.    There is evidence to support these answers.

The court gave to the jury the first and second instructions requested by appellee, which, in substance, told the jury that if appellant employed appellee to make sale of his farm, and if appellee found or procured a purchaser ready, able, and willing to buy the farm at the price and upon the terms fixed by appellant, and if appellant had agreed to pay appellee a commission, and if appellant agreed with the purchaser to take a less price than the price fixed by appellant with the appellee, and did sell the land to the purchaser for the less sum, he would be liable to appellee for the commission agreed upon, if any; also that if appellant employed appellee to make sale of his farm, and agreed to pay him a commission for finding a purchaser at a fixed price, and if appellee or his agent found a purchaser, and if appellant sold the farm to such purchaser for a price less than fixed by him to appellee, he would be liable to appellee to pay the commissions agreed upon, if any.    The second and third instructions given by the court of its own motion are very similar to the above, and

it is argued that such repetition was harmful. These instructions correctly state the law. They do not deny the right of the owner himself to sell to an independent purchaser not procured by the broker. Nor do we believe that the repetition was reversible error. Such practice is by no means commendable, but we can not say that the court's action would necessarily unduly influence the jury against appellant. It is, no doubt, the correct practice that, when a court has once stated to the jury a legal proposition clearly and fully, it should not repeat it; and, while the action of the court in the case at bar was error, we can not say it was reversible error. See *Union, etc., Ins. Co.* v. *Buchanan*, 100 Ind. 63.

The fifth instruction given by the court of its own motion was as follows: "If John W. Williams acting as the agent of the plaintiff procured a purchaser for the farm of the defendant under an agreement between the plaintiff and defendant in the person of his brother-in-law who was willing to purchase said farm at the price agreed upon between the plaintiff and defendant, and if said Williams took said purchaser to said Mullen and said purchaser told said Mullen that he would not deal through agents, but wanted to deal with him directly, and asked him what was the least sum he would take for said farm, and said Mullen priced the same at a price less than the price fixed by him to the plaintiff Bower, and, to induce him to sell to said purchaser, the said Williams concealed from him the fact that said purchaser would pay the price fixed by the defendant to the plaintiff and induced him to sell in the belief that if he sold said farm at said less price no commissions would be charged on account of the arrangement between the plaintiff and defendant, the plaintiff could not recover; but if on the other hand said Williams warned the defendant that if he sold at such less price he would be liable for commissions to the plaintiff on account of procuring such purchaser, he would be entitled to recover." This instruction is correct so far as it goes, but we do not be-

lieve it goes far enough.   Concealing the fact that a higher price had been offered by the purchaser is not the only concealment that would prevent a recovery.   If there was evidence to the effect that other material facts were concealed from appellant by Williams, such evidence should have been considered by the jury under a proper instruction, when requested.

Appellant testified that Williams told him his brother-in-law, Lewis, would be up to see the farm; that he met Williams and Lewis going out to look at the farm; that he went out where they were on the farm, and in the conversation Lewis asked witness the price, and said he did not want to trade with any agent; "I want to trade with you individually;" that witness said to Lewis he would take $6,000; that in the conversation Williams said to witness, " 'What will you do about Mr. Bower?' and I says, 'Have you and Mr. Bower made any contract about it at all?'   And he says, 'I don't charge you anything for this,' " that Williams and Lewis both said that Lewis had not seen or met Bower; and that Williams said that they had made no arrangements with Bower; that at no time during the negotiations did Williams say anything to witness on the subject of commission to appellee.   He further testified that Williams and Lewis wanted to know if he would give them until Monday, and "I told them I couldn't tell them, that, if Mr. Bower had made arrangements to sell it, I said I will have to let it go. It is first come first served."   Williams testified that he and. Lewis started out to look at the farm, and met appellant; that witness told appellant who Lewis was, and that he had come to look at the farm; that appellant told them to go out and look at the farm; that, while out there, witness priced the farm to Lewis at $6,160, which Lewis agreed to give; that appellant came out and took them through the house, barn, and orchard; that they were standing west of the house, "and my brother-in-law looked at me, and laughed, and he says, 'Mr. Mullen, what is the least

money that will buy this farm?' and he says, 'Six thousand dollars;' and I says, 'Mr. Mullen, wouldn't you get yourself into trouble with Mr. Bower about the commission?' and he says, 'No, not at all; I am selling this farm;' and I never said another word to him about commission." This witness, in rebuttal, testified that he said to appellant he did not charge him any commission, and that his commission came off Bower; that he never told appellant that he and Bower had a contract for the sale of the land, but that appellant understood it; that, when the three were on the farm, he did not state to appellant that he and appellee had made any particular arrangements for the sale of the land at that particular time. Lewis testified that, when he asked appellant the price of the farm, Williams said, "What about Mr. Bower?" that appellant answered, "that is all right, I am selling it;" that he thought Williams told appellant that he did not expect to charge him anything; and that he expected to get his pay from Bower. Appellee testified that Williams reported to him after the sale was made, but that he said nothing to appellant about the commission until after the deed was made, for the reason that he feared if he did speak about the commission it might spoil the trade. It further appears that appellant knew Williams had brought Lewis to look at the farm, but there is no evidence that appellant knew that in bringing Lewis to the farm Williams was acting for appellee; that the conversation at the farm took place on Saturday, and Lewis went home, and the money was put in the bank in Williams' name, and on the following Monday the deed was made, and the money turned over to appellant by Williams.

The first instruction requested by appellant and refused was as follows: "If you find from the evidence given to you in this cause that the defendant employed plaintiff as a real estate broker to sell his farm, and that the plaintiff, for the purpose of aiding and assisting him in selling said farm, and for the purpose of procuring a purchaser therefor, took into his employ and service one John W. Williams, and if

Mullen *v.* Bower.

you further find that said Williams, aiding and assisting said plaintiff in the sale of said farm, took to this defendant one Stanford Lewis as a probable purchaser for said farm, and if you further find that in the presence of said Williams the said Lewis inquired of this defendant the selling price of said farm, and then and there informed the defendant that he desired to purchase direct from the owner, and that he had never seen or been introduced to the plaintiff, and that he would not purchase of commission men, and you further find that the defendant did not know that the sale was being made by the plaintiff, and if said Williams stood by and did not inform this defendant that the sale was being made by the plaintiff, the plaintiff would now be estopped from claiming that the said Williams was acting for and on his behalf in the sale of said farm, and you should find for the defendant."

This instruction should have been given. It was for the jury to weigh the conflicting evidence, and determine what it proved; but Williams, who stood in the appellee's place, was bound to exercise the utmost good faith toward appellant. There is evidence that Lewis had never seen appellee, and that he said he would not purchase of an agent, and desired to purchase direct from the owner, and there is no evidence that appellant knew that the sale was being made by appellee. There is evidence to show that appellant thought he was selling to an independent purchaser so far as appellee is concerned, and there is evidence to show that Williams must have known that appellant was laboring under that belief. It was to appellant's interest to receive the greater price, and it was Williams' duty to conceal from him nothing that would enable him to get that price. It was his further duty to inform appellant, at the time the sale was being made by appellee. It was appellant's right to know from Williams that Lewis had offered a greater price, and that the sale was being made by appellee. If these facts were concealed from appellant, appellee could not recover, and whether they were should have been submitted to the jury by a proper instruc-

tion. Appellee has not shown that he had the exclusive right to sell the farm; and, if he did not have, appellant could sell without liability for commissions unless he sold to a purchaser procured by appellee. *Dole* v. *Sherwood,* 41 Minn. 535, 43 N. W. 569, 5 L. R. A. 720; *McClave* v. *Paine,* 49 N. Y. 561; *Dolan* v. *Scanlan,* 57 Cal. 261; *Stewart* v. *Murray,* 92 Ind. 543. The general rule is that a broker is entitled to his commissions when he has procured a purchaser ready to comply with the terms of the principal. But this rule can have no application where there is a want of good faith on the broker's part towards the principal.

In *Young* v. *Hughes,* 32 N. J. Eq. 372, it is said: "Among other things, he [the broker] is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed. The principal has bargained for the agent's skill and experience, and is entitled to expect his active aid in the conduct of the negotiations."

In *Martin* v. *Bliss,* 57 Hun 157, 10 N. Y. Supp. 886, Bliss, the owner, employed Martin at a fixed commission to sell her house at a price named. Martin took a purchaser to see the house, who afterwards agreed with Martin to buy at the price. Martin then went to the owner and endeavored to get her to take less, which she refused to do, and he finally told her they would take the house. The next day Martin went to the owner with a contract for her to sign, but she refused. Suit was brought to recover the commission on the ground that a customer willing to pay the price had been produced. This case recognizes the principle that a broker may recover where he has produced a purchaser willing and able to purchase at the terms fixed. But it was held that, because of the bad faith of the broker in fraudulently concealing from the owner the fact that the purchaser had acceded to her terms and endeavoring to get her to take a less price, there could be no recovery.

There is a want of good faith on the part of the broker

Garrigus *v.* Board, etc.

when he acts adversely to his principal's interest, or when, representing the seller, he conceals from the principal an arrangement intended for the advantage of the buyer.     Story Agency, section 334.     This rule is applied without reference to whether the result of the agent's conduct is injurious to the principal or not.     As is said in *Young* v. *Hughes, supra,* "It matters not that there was no fraud meditated, and no injury done.     The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it."     See *Clendenon* v. *Pancoast,* 75 Pa. St. 213; *Soule* v. *Deering,* 87 Me. 365, 32 Atl. 998; *Hammond* v. *Bookwalter,* 12 Ind. App. 177; *Everhart* v. *Searle,* 71 Pa. St. 256; *Pratt* v. *Patterson's Ex.,* 112 Pa. St. 475, 3 Atl. 858; *Wadsworth* v. *Adams,* 138 U. S. 380; Story Agency, sections 208, 331, 334; Wharton Agency, sections 336, 715; Mechem Agency, section 952.

In *Pratt* v. *Patterson, Ex., supra,* it is said: "A real estate broker's commissions are earned whenever he has procured a buyer who will comply with the conditions fixed by his principal for the property proposed to be sold.     But it is to be understood that this rule depends not only on the fact that the broker is to be regarded as the agent of the seller, but that, as such agent, he acts with the utmost good faith towards his principal, and if he does not so act he is entitled to nothing."

Judgment reversed, with instructions to sustain the motion for a new trial.