## Provident Trust Company *v.* Darrough.

[No. 20,844.   Filed November 14, 1906.   Rehearing denied January 18, 1907.]

1.  Statutes.—*Sales of Real Estate.—Principal and Agent.— Commissions.*—The purpose of the statute (§6629a Burns 1901, Acts 1901, p. 104) was to protect owners of real estate against conflicting claims of alleged agents for services in selling the real estate of such owners.   p. 35.

2.  Contracts.—*Commissions.—Sales of Real Estate.—Statutes.* —A recovery of commissions for the sale of real estate can be had only by showing a contract in writing therefor, signed by the owner as provided by §6629a Burns 1901, Acts 1901, p. 104.   p. 36.

3.  Same.—*Sales of Real Estate.—Commissions.—Statutes.—To Whom Applicable.*—The act of 1901 (Acts 1901, p. 104, §6629a Burns 1901), providing that contracts with an owner of real estate for a commission for the sale thereof must be in writing and signed by such owner, does not invalidate a contract be-

tween such owner's agent and a subagent for a commission to be paid by such agent to such subagent for the sale of the owner's real estate. p. 36.

4.  ESTOPPEL.—*Contracts.*—*Breach.*—*Silence.*—Where an agent agreed with his subagent that if such subagent would find a purchaser for certain lands, he should receive a certain commission, and such subagent furnished such purchaser, but before the final negotiations such agent revoked by letter any further action by such subagent, the subsequent silence of such subagent during such final negotiations does not estop him from claiming such commission. p. 37.

5.  CONTRACTS.—*Revocation.*—An offer by an agent to pay a subagent a certain commission in case such subagent found a purchaser for a farm, which offer was accepted, cannot be arbitrarily revoked during the negotiations of such subagent with a proposed purchaser found by him. p. 37.

6.  PLEADING.—*Contracts.*—*Conclusions of Pleader.*—*Which Control.*—The meaning of a written contract set out in a pleading cannot be changed by an erroneous deduction of the pleader. p. 37.

7.  CONTRACTS.—*Sales.*—*Commissions.*—A contract providing that if a subagent shall find a purchaser for lands at certain terms, he shall be entitled to a certain commission, such subagent's finding such purchaser entitles him to the agreed commission; and he is not required to conduct the actual negotiations in making the sale. p. 37.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by John S. Darrough against the Provident Trust Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Marshall, McNagny & Clugston,* for appellant.

*Andrew A. Adams,* for appellee.

MONTGOMERY, J.—This action was brought by appellee to recover compensation for services rendered in connection with the sale of real estate. The complaint was in a single paragraph, to which an answer in five paragraphs was filed. Appellee's demurrer to the second, third and fourth paragraphs of answer was sustained. The first paragraph of answer was a general denial, and the fifth alleged a revocation of appellee's authority to sell the land involved.

A trial by the court was had, a special finding of facts made, with conclusions of law in favor of appellee, and judgment was rendered accordingly. It is charged on appeal that the court erred in overruling appellant's demurrer to the complaint, in sustaining appellee's demurrer to the second, third and fourth paragraphs of answer, in each conclusion of law stated, and in overruling appellant's motion for a new trial. The merits of the controversy and the questions argued can be most concisely presented by setting out the substance of the special finding of facts, which is as follows: Appellant is a corporation, organized in 1899, and engaged in a general trust business, and also in selling real estate on commission. Since its organization Martin L. Galbreath has been general manager of the business of the corporation and has given his entire time to the management and direction of its affairs. Prior to June 12, 1902, appellant had for sale a certain 400-acre farm, known as the "Nancy DeVault farm." Appellee, a resident of the town of Watseka, Illinois, and by occupation a real estate dealer, having learned that appellant had said farm for sale, sent the following letter:

"Watseka, Illinois, June 12, 1902.

M. L. Galbreath,
        Columbia City, Indiana.

Dear Sir: I understand you have a farm of 400 acres near Collins Station, Indiana, at $37.50. If so, and there were the customary $1 per acre for me, I may be able to get you a buyer. I would not buy it myself, as I have already bought a half section just north of Collins for much less per acre. Write me best price and terms, also add $1 per acre for my commission if you wish me to get you a buyer.

                        Yours truly,
                              John S. Darrough."

Said letter was duly received, and on June 14, 1902, appellant sent to appellee the following letter:

"Columbia City, Indiana, June 14, 1902.
Mr. John Darrough,
            Watseka, Illinois.

Dear Sir: We herewith enclose rough sketch of the farm in question, which will give you a good idea of its location with reference to your farm in the same locality. We think this farm is a good bargain at the nominal figure of $37.50 per acre. At this price we would let the crops now growing on the farm go with it, provided the deal can be made before we have to look after the harvesting. There are nearly thirty acres of good wheat, twenty-five acres of corn planted, and quite a lot of oats. There will be over 'fifty tons of hay to be made. The wheat and oats are to be threshed and put in barn (landlord's share is one-half), the hay is to be made and put in barn, but the corn is to be cut and shocked and the same is to be divided half and half on the ground. There are three barns, two good houses, a poor tenant house, a fine hog house, plenty of corncrib room, and good water. In fact it is a fine farm and will bear close inspection. There is some rough land on it and about sixteen or eighteen acres of muck of the same kind which your farm has. It is well watered, and located in a fine neighborhood, near good school and churches. The enclosed diagram will show the roads and the exact description of the farm, with its relative position to the roads. The railroad barely touches it, making less than eight rods frontage on the road. We will give a perfect merchantable title, as shown by an abstract of the same, a warranty deed, and will pay all taxes payable and collectible in the year 1902. While it seems to us a liberal commission at $1 per acre, we will allow it in order to close the deal. We will pay the expenses of livery hire in the examination of the land for all customers that you may bring or send to us. Trusting that you may find it to your interest to push the matter along as speedily as possible, we remain,                    Respectfully yours,
                                    Provident Trust Co.
                                    M. L. Galbreath."

This letter was received by appellee, who at once undertook to procure and send to appellant a purchaser for said farm, and in order the better to describe the same to prospective purchasers came to Whitley county, Indiana, and personally inspected the land.    Among the persons seen by appellee in regard to purchasing the farm was A. M. Culver, residing at the town of Sheldon, Illinois, who about ten days thereafter came to Whitley county to look at said farm, and upon his arrival at Columbia City went to the office of appellant and introduced himself to the general manager as a man sent by appellee to look at the DeVault farm.    Appellant's general manager took Culver to see the farm, and offered the same to him at $35 per acre without the crops, and at $37 or $37.50 per acre with the crops; but Culver declined to pay the price asked, and offered $30 per acre, but no sale was closed.    On July 27, 1902, appellee wrote appellant as follows:

"July 27, 1902.

Mr. M. L. Galbreath,
<blockquote>Columbia City, Indiana.</blockquote>

Dear Sir:    As I came home I stopped off at Sheldon and had a talk with Mr. Culver.    He said he liked the farm fairly well, but it has lots of hard work to be done, and he said you wanted six per cent on loan on deferred payments.    A straight five per cent five-year loan commands a premium here, so I wish you would either make the terms one-half cash and five per cent on deferred payments or one-half cash and you make the loan at five per cent at five years.    It would help the chances of sale very much.

Hoping we may be able to sell the farm, I am,

Truly yours,

John S. Darrough."

This letter was duly received, and on August 1, 1902, appellant, by its said general manager, replied as follows:

"Mr. John S. Darrough,

Watseka, Illinois.

Dear Sir: Mr. Culver spent two days here this week and we made a thorough examination of the big farm, and the truth is that he likes the farm very well, but thinks there is too much work to be done for one so old as he, and for that reason we have no hopes of making a sale to him. Besides this, some of the heirs are of the opinion that we have quoted the land too low and that it must net them $35. This is the price at which we quoted the land to Mr. Culver, and we will be compelled to make it net the heirs that amount. If you still desire to assist us in the sale and think you can make it go at enough over $35 to pay you for your trouble, you are at liberty to proceed, but if we will have to allow a commission on the bill at the nominal figure of $35, we will be compelled to revoke all former arrangements on this tract. We will divide with you on all other lands. We are,

Respectfully yours,

M. L. Galbreath."

About August 1, 1902, Culver again came and examined the farm, but did not buy; and, on October 1, 1902, appellant's said general manager wrote inviting him to come to Whitley county and examine other lands which appellant had for sale. In response to the invitation, Culver came and examined other lands, but was not pleased, and requested another examination of the DeVault farm. After again looking the land over, and before returning, he bought the farm at $35 per acre without the crops; and has paid the purchase price in accordance with the terms of the purchase. After such sale to Culver, on or about October 10, 1902, appellee demanded of appellant the sum of $400, as his commission for securing and sending a purchaser for said farm, but appellant refused payment, and has not paid the same. On October 15, 1902, appellant, by its general manager, wrote appellee the following letter:

"Columbia City, Indiana, October 15, 1902.
Mr. John Darrough,
  Watseka, Illinois.

Dear Sir: From the contents of your favor of the 14th instant we infer that you must refer to my letter addressed to you on June 14, but in order that you may be set right it will be necessary again to read our communication bearing date of August 1, wherein we revoke all former arrangements concerning the sale of the land in question. Trusting that your sense of honor will direct you aright in this matter, we remain,
      Respectfully yours,
        M. L. Galbreath."

Culver was procured to come and examine the farm wholly through the efforts of appellee, and no one else had anything to do in opening negotiations with him for the purchase of the land; and appellee was the efficient cause in securing a purchaser for, and consummating a sale of, said farm. Upon these facts the court stated as conclusions of law, that there had been no rescission of the contract, and that appellee was entitled to recover of appellant the sum of $400, with costs of suit.

The point chiefly relied upon by appellant for a reversal of the judgment is that the contract sued upon was not alleged or shown to have been signed by the owner of the real estate or his legally appointed and duly qualified representative. The statute upon which this contention is founded reads as follows: "No contract for the payment of any sum of money, or thing of value, as and for a commission or reward for the finding or procuring, by one person, of a purchaser for the real estate of another shall be valid, unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative." §6629a Burns 1901, Acts 1901, p. 104. The manifest purpose of the statute was to protect owners of real estate against doubtful and conflicting claims for services as alleged agents in con-

nection with real estate sales. It is within our judicial knowledge that numerous controversies and lawsuits have arisen from such claims. These contracts are now 2. required to be in writing, signed by the owner or his duly authorized agent, so that there may be no doubt of the existence of the contract, or dispute as to its provisions. In an action for commissions against the owner of real estate sold, a substantial compliance with the terms of the statute will be required. *Zimmerman* v. *Zehendner* (1905), 164 Ind. 466; *Beahler* v. *Clark* (1904), 32 Ind. App. 222.

The operation of the statute will not be extended further than necessary to make its spirit and purpose effective. The owner of the real estate is not involved in this 3. controversy, and the contract sued upon is not tainted with illegality, unless wholly condemned by the statute quoted. We can conceive of no reason why such a contract in writing should be outlawed by legislative fiat, and the legislature did not intend by this enactment to provide a way for one party to repudiate his covenants in writing after receiving the stipulated consideration from the other. The object of the law was not to denounce as invalid contracts in writing which were always and everywhere valid before, but only to require the substitution of written for parol agreements, in order to bind owners of real estate for the payment of commissions on sales. The written contract in suit being properly executed by appellant is not in conflict with the statute under consideration, but is valid and enforceable. We accordingly hold that the court did not err in overruling appellant's demurrer to the complaint, or in sustaining appellee's demurrer to the third paragraph of answer, or in stating the second and third conclusions of law.

The second paragraph of answer, as construed by appellant's counsel, was a plea of estoppel. It is insisted that

appellee was silent when he should have spoken and appellant was thereby misled. A fatal defect in the pleading, as we view it, is that appellant at all times had equal and full knowledge of appellee's right to compensation, and was not warranted in assuming from appellee's mere silence that he had relinquished his interest in a sale of the farm to Culver. It is clearly shown that the contract to sell was a continuing one, and the price was fixed at $37.50 per acre, including the crops, if sold before harvest. Appellee found and furnished the purchaser, and appellant voluntarily quoted the price at $35 per acre without the crops. We are unable to say from the facts pleaded that appellant was injured by the change in the terms of the sale, and are of opinion that the answer was insufficient, and appellee's demurrer thereto was correctly sustained.

The fourth paragraph of answer in an argumentative way attempts to plead a revocation of the agreement sued upon by appellee. We are unable to concur in the conclusions of the pleader. A proper construction of the letters exhibited will not sustain the fact alleged—that the contract between appellant and appellee was rescinded—and it is a familiar principle that the substance of the writings cannot be changed by the erroneous deductions of the pleader. The facts found by the court fully sustain the first conclusion of law stated, that there had been no rescission of the contract in suit.

Appellant contends that there was no evidence that the sale of the farm to Culver was made by appellee. His contract did not require him to make the sale, but only to find and furnish a purchaser to whom a sale could be made by appellant. That he did find and produce such a purchaser is beyond dispute, and when the sale to such customer was effected his commission was fully earned. No error was committed in denying appellant's application

for a new trial. *Storer* v. *Markley* (1905), 164 Ind. 535; *Miller* v. *Stevens* (1899), 23 Ind. App. 365; *Mick* v. *Stephenson* (1899), 22 Ind. App. 475; *Mullen* v. *Bower* (1899), 22 Ind. App. 294; *Mullen* v. *Bower* (1901), 26 Ind. App. 253.

No error appearing, the judgment is affirmed.