## OLCOTT v. McCLURE.

[No. 7,539.   Filed April 3, 1912.]

1. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Statute.*—In an action to recover a commission for the sale of real estate, where the alleged contract is composed of letters written to plaintiff, the contract is governed by §7463 Burns 1908, Acts 1901 p. 104, and said section must be strictly construed in that there must be no doubt as to the existence of such written contract and no dispute as to its contents or provisions. p. 85.

2. CONTRACTS.—*Contents.*—*Sufficiency.*—If a writing contains matter sufficient to enable the court to ascertain the subject matter and the terms and conditions of the obligation or contract to which the parties intended to bind themselves, it is sufficient. p. 86.

3. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Contract Composed of Correspondence.*—*Sufficiency.*—Where an alleged commission contract for the sale of real estate is composed of correspondence, its effect is to be collected from "all within the four corners" of the several letters or writings which go to make

up the same, and where it appears therefrom that the minds of the parties met as to the subject matter of the contract, its description, the terms on which it was offered, and the commission to be paid in the event of sale, such correspondence is sufficient to constitute such contract. p. 86.

4. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Correspondence.*—*Unilateral Proposition.*—*Acceptance.*—Where defendant enclosed a letter in an envelope addressed to plaintiff in which he offered certain described land for sale at a named price and stated therein that he would pay a commission of one dollar per acre to the agent with whose buyer he consummated a sale at the price and terms named, though the proposition when standing alone was merely unilateral, it became of binding effect by acceptance. p. 87.

5. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Contract by Correspondence.*—*Identity of Parties.*—In an action on a commission contract for the sale of real estate, where the alleged contract is made up of correspondence, such correspondence, consisting of a letter offering certain land for sale and offering a commission to the agent selling same, which, though not addressed to plaintiff or any one else, was written by defendant and by him mailed in an envelope addressed to the plaintiff, a letter from plaintiff addressed to defendant stating that he would undertake to find a purchaser, and a letter from defendant acknowledging receipt of plaintiff's letter, sufficiently identified the parties to the contract. p. 88.

6. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Contract by Correspondence.*—*Complaint.*—*Allegation as to Acceptance of Employment.*—In an action to recover a commission for the sale of real estate under a contract made up of correspondence, the allegations of the complaint that, after receiving a letter from defendant offering certain land for sale and offering to pay a commission to any agent selling same, plaintiff mailed a letter to defendant acknowledging receipt of defendant's letter and stating that he would undertake to find a purchaser for the land according to the terms of said letter, that he would write in regard to prospective purchasers, and that defendant should come or send some one when notified by plaintiff, are sufficient to show an acceptance of the proposition made by defendant. p. 88.

7. CONTRACTS.—*Commissions.*—*Sales of Real Estate.*—*Offer and Acceptance.*—*Unreasonable Delay.*—The fact that defendant's proposition to pay a commission for the sale of real estate bore the date of October 19, 1907, did not make the contract open to the objection that there was unreasonable delay in the acceptance of the proposition, where it is shown that the proposition was mailed

and received in the spring of 1908, and that immediately upon its receipt the acceptance was written and mailed to defendant. p. 88.

8. CONTRACTS.—*Actions.—Complaint.—Allegation of Performance.*— Ordinarily the general averment that plaintiff has performed the contract in all things on his part to be performed, will be sufficient in a complaint to recover on a contract. p. 89.

9. CONTRACTS.—*Sales of Real Estate.—Action for Commission.— Complaint.—Sufficiency.—Performance.*—In an action to recover a commission for the sale of real estate, where the contract was composed of correspondence consisting of defendant's letter in which defendant offered certain land for sale and stated that he would pay a commission of one dollar an acre to the agent with whose buyer he consummated a sale at the price and terms named, plaintiff's letter to defendant accepting the employment, and defendant's reply letter to plaintiff in which he wrote that he was glad plaintiff would undertake to find a purchaser for said farm, that he would consider good trades and that he would keep good his words as expressed in said first letter if he made a sale with a purchaser found by plaintiff, the allegation of the complaint, that plaintiff produced a purchaser for said land with whom the defendant consummated a sale and to whom he conveyed said land for other land and property, sufficiently shows a performance of the contract by plaintiff. p. 89.

10. PLEADING.—*Demurrer.—Admissions.*—By demurring to a complaint the allegations thereof are admitted to be true for the purposes of the demurrer. p. 91.

11. CONTRACTS.—*Commissions.—Sales of Real Estate.—Statute.*— The statute requiring contracts to pay commissions for selling real estate to be in writing (§7463 Burns 1908, Acts 1901 p. 104), was not enacted to enable owners of real estate to commit fraud and imposition against real estate agents, but to protect such owners against the imposition and fraud of such agents. p. 91.

From Jennings Circuit Court; *James K. Ewing,* Special Judge.

Action by William W. Olcott against Richard K. McClure. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Harry C. Meloy,* and *Korbly & New,* for appellant.
*William Fitzgerald,* for appellee.

HOTTEL, J.—Appellant brought this suit to recover a commission of $1,846, alleged to be due him from appellee on a written contract for the sale of appellee's land.

A demurrer was sustained to an amended second paragraph of complaint, to which ruling a proper exception was saved. Appellant refused to plead further, and judgment was rendered against him on said paragraph. Said ruling presents the only error relied on in the appeal. This paragraph, after averring that plaintiff was a real estate broker engaged in the business of selling real estate, with his principal place of business at North Vernon, Indiana, and that the defendant resided in the city of Frankfort, Kentucky, avers, in substance, that in the spring of 1908, plaintiff entered into a written contract, whereby he undertook to find a purchaser for defendant's farm of 1,846 acres in the State of Texas; that in case defendant consummated a sale with such purchaser, plaintiff was to receive "a commission of one dollar per acre of said Texas farm, to wit: the sum of eighteen hundred and forty-six dollars;" that said written contract was composed of three letters, viz.: (1) A letter bearing date of October 18, 1907, received by plaintiff in the spring of 1908, a few days after it had been mailed at the city of Frankfort, which letter is filed with the complaint as exhibit A, and is as follows:

"Office of R. K. McClure & Sons,
Incorporated.
Frankfort, Ky. Oct. 19, 1907.

Dear Sir:—
Enclosed you will find description of a Texas farm, offered for sale at a very attractive price. To the agent with whose buyer I consummate a sale, at the price and terms mentioned, I will pay a commission of $1.00 an acre so soon as the terms of the sale are complied with, but I am in no event to be held liable for more than one commission.

For further information address either the undersigned at Frankfort, Ky., or W. H. McClure, Weatherford, Texas. In case you get any prospective customers

to go to look at this land, W. H. McClure is at Weatherford prepared to show it.

> Yours truly,
> R. K. McClure.''

It is further averred that said letter was enclosed in an envelope directed to plaintiff in the name and style of W. W. Olcott; that with said letter there was enclosed a typewritten description of said Texas farm, with the statement that it was offered at $16 per acre, and that time would be given on said deferred payments as buyer and seller might agree; that immediately on the receipt of this letter, plaintiff addressed and mailed to defendant, at Frankfort, a letter acknowledging the receipt of said letter, and accepting the employment therein, with the statement that he (plaintiff) ''would undertake to find a purchaser for said Texas real estate according to the terms of said letter,'' and that he would write in regard to prospective purchasers, and that defendant should come or send some one to North Vernon when notified. It is averred that this second letter was signed by plaintiff in the name and style of W. W. Olcott; that the same is in the possession and control of defendant, and that plaintiff has no copy, and for this reason is unable to file a copy of the same, but sets out the substance thereof; that a few days after plaintiff had mailed his letter, he received another from defendant, addressed to him in the name of W. W. Olcott, and the paragraph then sets out what is averred to be the substance of this letter which is, in effect, that defendant had received plaintiff's letter, and was glad that he would undertake to find a purchaser for said farm; that he (defendant) had not misrepresented matters in his first letter; that he would consider good trades and keep good his word as expressed in his first letter, *''if he made a sale with a purchaser found by appellant.''* It is then averred that plaintiff undertook said employment, advertised said farm, and began negotiations to find a purchaser therefor; that he induced parties to visit said land,

and under said contract conducted negotiations between defendant and prospective purchasers; that in the fall of 1908, while performing his duties as such real estate broker, and while acting under said contract of employment, plaintiff introduced to defendant one Elmer F. Emery, as a prospective purchaser for said Texas real estate, with whom defendant consummated a sale of said real estate, and to whom he conveyed said Texas land, receiving therefor 250 acres of land in Jennings county, Indiana, and 200 acres of land in Monroe county, Indiana, and other property; that plaintiff assisted in inducing said Emery to purchase said land, defendant making his own terms with said purchaser, and receiving a consideration satisfactory to himself, uninfluenced by plaintiff; that plaintiff performed his said contract in all things on his part to be performed; that there is due from defendant to plaintiff, for his services under said contract, $1,846, all of which is due and wholly unpaid.

Appellant's inability to state the exact date of entering into said written contract, his inability to state the exact date of receiving either of said letters one and three, and of mailing letter number two, the loss of the envelope in which the first letter and paper containing description of real estate were sent to him, the loss of the said paper containing said description, the loss of the third letter, the fact that appellant had no copy of any of said lost papers, and his inability for said reason to file copies of either of said lost papers, are each and all specifically and certainly averred, so that no question is raised or presented on account of the absence of any of these technical averments necessary to account for the absence of copies of the alleged lost letters and paper, and the question in the case turns solely on the construction to be placed on, and the effect to be given to, the letter exhibit, and the averments as to the contents of the lost letters and paper.

Section 7463 Burns 1908, Acts 1901 p. 104, is as follows: "That no contracts for the payment of any sum of money,

or thing of value, as and for a commission or reward for the finding or procuring, by one person, of a purchaser for the real estate of another shall be valid, unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified representative.''

Said section governs the contract sued on, and the Supreme Court has said that the same must be strictly construed, in that there must be no doubt as to the existence of such written contract and no dispute as to its contents or provisions. *Provident Trust Co.* v. *Darrough* (1907), 168 Ind. 29, 36, 78 N. E. 1030.

It is expressly averred that the contract was in writing, and in this regard the requirement of the statute is met, so that the questions here presented are, in their last analysis: (1) Is there enough in the letter exhibit, supplemented by the alleged contents of the lost paper accompanying the same, together with the alleged contents of the two lost letters, to show a certain and definite understanding and agreement between appellant and appellee? (2) If such agreement is, in fact, shown by such exhibit, lost letters and paper, do the averments of the complaint show such a performance of said agreement according to its terms and provisions as entitles appellant to the benefits of the same?

In the case of *Austin* v. *Davis* (1891), 128 Ind. 472, 476, 26 N. E. 890, 12 L. R. A. 120, 25 Am. St. 456, the Supreme Court said with reference to contracts of the character here involved: "If a contract which comes within the statute of frauds can be extracted from correspondence between the parties upon the subject of the contract, the statute is satisfied." See, also, *Thames Loan, etc., Co.* v. *Beville* (1885), 100 Ind. 309, 313; *Roehl* v. *Haumesser* (1888), 114 Ind. 311, 317, 15 N. E. 345; *Wills* v. *Ross* (1881), 77 Ind. 1, 40 Am. Rep. 279.

If a writing contains matter sufficient to enable the court to ascertain the subject-matter and the terms and conditions of the obligation or contract to which the parties in-

tended to bind themselves, it is sufficient. The effect
2.  of such written contract is to be collected from "all
    within the four corners" of the several letters or writ-
    ings which go to make up the same, and if it can be
3.  so collected such writings will be held sufficient to
    constitute a contract. *Willy* v. *Michigan, etc., Ins.
Co.* (1890), 123 Ind. 411, 413, 24 N. E. 141, 8 L. R. A. 365,
18 Am. St. 327; *Warrington* v. *Early* (1853), 2 El. & Bl.
(75 Eng. Com. Law) 763.

Under the averments of this paragraph of complaint, the
subject-matter of the contract, namely, the farm offered for
sale, its description, the terms on which it was offered, the
amount which appellee agreed to pay to the agent with
whose buyer he might consummate a sale, can be definitely
and certainly ascertained.

Appellee in his brief says: "The primary question is
whether the correspondence shows an agreement, upon
which the minds of the parties met, as to description, terms,
price, and commission, or whether the negotiations are in-
choate and unperfected until something should intervene
and be determined in order to give it full effect." See
*Everitt* v. *Bassler* (1900), 25 Ind. App. 303, 308, 57 N. E.
560.

We think the test here furnished a proper one, and that
the contents of letter number one, supplemented by the
averments of the complaint as to the contents of appellant's
letter of acceptance and the lost paper and letters, meet every
requirement of the rule announced.

It is insisted by appellee that his first letter or proposition
was nothing more than an invitation to the person to whom
it was made to make an offer to the proposer. This conten-
tion is clearly against the import and meaning of the lan-
guage of the proposition, especially that part of the same
which is in the following words: "To the agent with whose
buyer I consummate a sale at the price and terms named, I

will pay a commission of $1.00 per acre, so soon as the terms of the sale are complied with.'' These words import more than an invitation for an offer. They are a definite, certain proposition, the acceptance of which should bind the proposer.

4. Of course, standing alone, exhibit A is nothing more than a proposition which is unilateral, but it is such a proposition as may become binding by acceptance.

In the case of *Chicago, etc., R. Co.* v. *Derkes* (1885), 103 Ind. 520, 523, 3 N. E. 239, the Supreme-Court said on this subject: ''The contract or bond, when it was first executed, was what is sometimes called an unilateral contract, or a proposition merely from the appellees to the appellant. But when, as shown by the facts stated in each paragraph of the complaint, such contract, bond or proposition, after its delivery by the appellees, was accepted by the appellant, and the affirmative acts on its part, called for and constituting the consideration of such contract, bond or proposition, were fully done, kept and performed by appellant, the appellees cannot be heard to claim there is any want of mutuality in the instrument. So far as that question is concerned, the affirmative acts of the appellant done and performed, as alleged, upon the faith of such contract or bond, made it thenceforward the mutual, valid and binding contract of each and all of the contracting parties.'' See, also, *Thiebaud* v. *Union Furniture Co.* (1896), 143 Ind. 340, 344, 42 N. E. 741; *Fairbanks* v. *Meyers* (1884), 98 Ind. 92, 97.

It is also contended by appellee that his first letter is not addressed to appellant, and that it does not show the names of both parties to the contract. The case of *Sprankle* v. *Truelove* (1899), 22 Ind. App. 577, 54 N. E. 461, is cited, wherein it is said at page 584: ''It is necessary that the note or memorandum should show who are the parties to the contract, by their names, or some reference or description sufficient to identify them.'' These requirements are com-

pletely met by the averments of this paragraph, that appellee's first letter was received by appellant a few days after it was addressed and mailed to him at appellee's home at Frankfort, and by the further averments of the contents of appellant's letter of acceptance, addressed to appellee at Frankfort, and the letter of appellee acknowledging the receipt of appellant's letter, etc.

As pertinent to this phase of the case, we quote from the language of an instruction approved by the Supreme Court in the case of *Thames Loan, etc., Co.* v. *Beville, supra:* "It will be sufficient if the letter or letters containing the plaintiffs' proposition were written at their request, or in their behalf, or with their assent, and that the contents of the letter or letters containing the answer to such proposition were communicated to the plaintiffs and assented to by them."

An acceptance of a proposition according to its terms and provisions is necessary to make the contract binding. *Havens* v. *American Fire Ins. Co.* (1894), 11 Ind. App. 315, 324, 39 N. E. 40; *Myers* v. *Smith* (1867), 48 Barb. 614. The averments of the complaint as to the contents of the second letter fully meet this requirement.

It is also urged that the proposition, exhibit A, bears date of October 19, 1907, and that there was unreasonable delay in acceptance, the same being deferred until spring of 1908. This objection is met by the averment that the same was received by appellant in the spring of 1908, a few days after it was mailed at Frankfort, and that immediately on receipt thereof, he wrote accepting the employment, together with the averments of appellee's letter in response thereto.

It is further insisted by appellee, in effect, that it was necessary for appellant to aver that he procured a purchaser who was ready and willing to buy "upon the terms proposed" or, "that he procured a purchaser who agreed to take such land at such price in exchange for other, and the

owner agreed to such trade and the property offered and taken in exchange was worth such price.''

The complaint in this case avers that appellant performed his said contract in all things on his part to be performed.

8. Ordinarily, such general averment is sufficient in this regard. *Fairbanks* v. *Meyers, supra; Purdue* v. *Noffsinger* (1860), 15 Ind. 386; *Home Ins. Co.* v. *Duke* (1873), 43 Ind. 418; *American Ins. Co.* v. *Leonard* (1881), 80 Ind. 272.

But conceding without deciding that, on account of· the peculiar character of the undertaking on the part of the agent in such cases, said general averment is not suf-

9. ficient in every case, it must be remembered that in the complaint under consideration it is averred that appellee in his second letter stated to appellant that he was glad he would undertake *to find a purchaser* for said farm, *that he would consider good trades,* and that he would keep good his words as expressed in said first letter, *if he made a sale with a purchaser found by appellee.* This paragraph then avers that appellant produced a purchaser for said land, with whom appellee consummated a sale of said real estate, and to whom he conveyed the same for other land and property. The cases cited by counsel, which seemingly tend to support their contention in this regard, are either cases where the agent produced a purchaser and the owner refused to sell, or cases where the contract provided that the agent should effect a sale. Of course, in such cases, it is necessary that the agent aver and prove that he produced a purchaser ready and willing to buy at the price and on the terms and conditions proposed by the seller to such agent. The reason for a distinction between this line of cases and those under which the case at bar falls is apparent.

The Supreme Court in the case of *Storer* v. *Markley* (1905), 164 Ind. 535, 537, 73 N. E. 1081, said: "The execution of the contract sued upon is conceded, and it is shown by the evidence that, in pursuance thereof, appellee

advertised the property for sale, and through his efforts a purchaser was found, at a price which was satisfactory to appellant, and a sale and transfer accordingly effected. The commission stipulated for in the contract was thereupon fully earned and due."

To the same effect are the following cases: *Lockwood* v. *Rose* (1890), 125 Ind. 588, 25 N. E. 710; *McFarland* v. *Lillard* (1891), 2 Ind. App. 160, 28 N. E. 299, 50 Am. St. 234; *Clifford* v. *Myer* (1893), 6 Ind. App. 633, 34 N. E. 23; *Platt* v. *Johr* (1894), 9 Ind. App. 58, 36 N. E. 294; *Mullen* v. *Bower* (1899), 22 Ind. App. 294, 297, 53 N. E. 790; *Miller* v. *Stevens* (1899), 23 Ind. App. 365, 370, 55 N. E. 262.

In the case of *Mullen* v. *Bower, supra,* this court approved an instruction containing the following language: "If appellant employed appellee to make sale of his farm, and agreed to pay him a commission for finding a purchaser at a fixed price, and if appellee or his agent found a purchaser, and if appellant sold the farm to such purchaser for a price less than fixed by him to appellee, he would be liable to appellee to pay the commissions agreed upon, if any." The case of *Miller* v. *Stevens, supra,* is applicable to the facts of this case, and the court in that case very clearly distinguishes between the line of cases relied on by appellee as supporting his contention and the class of cases within which the one at bar falls. We quote from that case at page 370: "There is a marked difference between a contract by a broker to furnish a purchaser to his principal and a contract to effect a purchase or sale. In the first instance the broker has earned his commission when he has introduced and brought together the principal and the proposed purchaser between whom a deal is perfected, and in the second instance it is the duty of the broker to perfect a sale upon the prescribed terms submitted to him by the principal before he is entitled to his commission. * * * If a broker who has property for sale is instrumental in bringing the

owner of the property and a purchaser together, and a sale or an exchange is effected by the parties in interest, the broker will be entitled to his commission. * * * In Missouri, it was held that a broker who introduced a purchaser to his principal, or gave his name, so a sale is effected by the owner, though on different terms than first contemplated, such broker is entitled to his commission. *Henderson & Jones* v. *Mace* [1896], 64 Mo. App. 393. If we keep in view the distinction between a contract of a broker to make a sale of his principal's property upon prescribed terms, and his contract to furnish his principal a purchaser to whom the principal sells upon his own terms, the solution of the question we are now considering becomes easy."

In the case of *Provident Trust Co.* v. *Darrough* (1907), 168 Ind. 29, 38, 78 N. E. 1030, the Supreme Court, speaking of §7463 Burns 1908, Acts 1901 p. 104, said: "The manifest purpose of the statute was to' protect owners of real estate against doubtful and conflicting claims for services as alleged agents in connection with real estate sales. * * * The operation of the statute will not be extended further than necessary to make its spirit and purpose effective."

If the facts averred in appellant's complaint be true—and for the purposes of the demurrer they are so admitted—to relieve appellee from the payment of the commission here involved would be to permit him to defeat and defraud the appellant of a commission honestly earned. The statute just cited was enacted to protect the owners of real estate against the imposition and fraud of real estate agents, not to enable them to commit such fraud and imposition against such agents.

We think it clear that the court erred in sustaining appellee's demurrer to the second paragraph of amended complaint. The judgment is therefore reversed, with instruc-

tions to the court below to overrule said demurrer, and for any other proceedings not inconsistent with this opinion.

Felt, C. J., Myers, Adams, Ibach, Lairy, JJ., concur.

NOTE.—Reported in 98 N. E. 82. See, also, under (1) 19 Cyc. 191, 219; (2) 9 Cyc. 298; (3) 9 Cyc. 299; 19 Cyc. 220; (4) 9 Cyc. 257; (5) 9 Cyc. 299; (6) 9 Cyc. 717; (7) 9 Cyc. 291; (8) 9 Cyc. 722; (9) 9 Cyc. 722; 10 Cyc. 274; (10) 31 Cyc. 333; (11) 19 Cyc. 219. As to the proof of employment necessary on the part of a real estate agent suing for commission, see 139 Am. St. 227. As to the necessity that a memorandum within the statute of frauds show the parties to the contract, see 13 Ann. Cas. 313. On the question what constitutes employment of broker which will entitle him to commissions otherwise earned, see 27 L. R. A. (N. S.) 786.