## COCHRAN v. STAMAN.

1. BROKERS—FRAUDS, STATUTE OF—COMMISSION ON SALE OF LAND.
   In an action by a broker upon a written contract to pay
   him all over $90 an acre received on the sale of a farm,
   as commission for making the sale, where the defense
   is that the writing was insufficient under the statute of
   frauds (section 11981, subd. 5, 3 Comp. Laws 1915), the
   test is as to whether the promise to pay the commission
   was in writing, and not as to whether the written agree-
   ment or promise contains also all of the details necessary
   to be stated in an agreement to sell and convey real estate.

2. SAME— COMMISSION — EVIDENCE — ADMISSIBILITY — PURCHASER,
   READY, ABLE, AND WILLING.
   Where the seller had agreed to accept $3,000 in cash and
   a mortgage at five per cent. for deferred payments, testi-
   mony that the broker produced a purchaser on the above
   terms, and, when his responsibility was questioned by
   the seller, the broker agreed to guarantee the sale, his
   responsibility being admitted, by taking the deed in his
   own name and executing the notes and mortgage, which
   he tendered, with $3,000, to the seller, held, admissible
   to show that the broker had earned his commission by
   furnishing a buyer ready, able, and willing to buy.

3. SAME—PLEADING—PROOFS—VARIANCE.
   Nor was there a fatal variance between the declaration
   and the proofs, on the ground that the action was brought
   to recover a commission of $10 an acre on the sale of
   237 acres of land, and the proofs showed that plaintiff
   proposed to himself buy the land at $90 an acre, since
   the plaintiff and the proposed purchaser both testified, in
   substance, that the purchaser agreed to take the land
   from plaintiff for $100 an acre.

4. SAME—EVIDENCE—APPEAL AND ERROR—HARMLESS ERROR.
   Testimony of plaintiff, in corroboration of his claim, that
   defendants refused to go on with the sale because the
   land was worth more, that at the time of the trial the
   farm was worth $250 an acre, held, even if incompetent,
   not so prejudicial as to require reversal of the judgment.
   FELLOWS, STONE, and KUHN, JJ., dissenting.

See notes in 44 L. R. A. 601; 9 L. R. A. (N. S.) 933; L. R. A.
1915E, 976.

Error to Wayne; Hally, J.   Submitted April 24,
1918.   (Docket No. 84.)   Decided June 3, 1918.

Assumpsit by Fred J. Cochran against Herman
Staman and another for commissions on the sale of
real estate.   Judgment for plaintiff.   Defendants
bring error.   Affirmed.

*Keena, Lightner, Oxtoby & Hanley,* for appellants.

*Donnelly, Hally, Lyster & Munro,* for appellee.

KUHN, J. (*dissenting*).   This is an action by a real
estate broker to recover a commission claimed to be
due him under the following agreement:

"NORTHVILLE, MICH., July 13, 1915.
"F. J. COCHRAN:
"In consideration of the services performed and to
be performed by you, I, the undersigned, hereby give
to you for a term of three months the exclusive sale
of the following described property: N. W. ¼ of sec-
tion 7 and the west ½ of the northeast ¼ of section 7,
T. 1 S. range 9 east, containing 237 acres more or less;
and you are hereby authorized by me to accept a de-
posit to be applied on the purchase price and to bind
the sale of the said above described property upon the
following terms:   $3,000 cash, or $............cash,·
balance at 5% interest ...................., and in
case of sale by you of said above described property I
agree to pay you ................ dollars as a com-
mission and all over and above the sum of ninety dol-
lars per acre received therefor, which said. commis-
sion and excess over agreed price is to be retained by
you out of the first money paid on said property.   Upon
receipt of payment according to this. contract I agree
to make a good and sufficient conveyance of said prop-
erty by warranty deed.
"This agreement shall be in full force for the term
above specified, also to continue until I give you 30
days written notice of withdrawal.
"I do here state that I am in peaceful possession of
the above described property and that my title to same

is good and is without incumbrance except ..........
"Owner...... Witness (Sgd.) Anna Staman (Seal)
"Address.....            "       H. C. Staman (Seal)
"Phone."

The circumstances attending the execution of this agreement were as follows: After some preliminary talks between the plaintiff and the defendant Herman Staman relative to the possibility of effecting a sale of the latter's farm, the plaintiff, on July 13, 1915, having first prepared a typewritten outline of the above agreement, went out to the farm and found Mr. Staman in the hay field. After a little conversation with him, plaintiff went to the house to get the description of the property. Mrs. Staman showed him the deed of the farm, and he inserted the description in the proposed agreement and filled in the price, amount to be paid in cash, etc., and had Mrs. Staman sign it; then he took it back to Mr. Staman in the field, where the latter signed it. It is plaintiff's claim that Mr. Staman read it over before signing, or rather that they compared the two copies of the agreement, plaintiff reading one aloud while Mr. Staman watched the other. Mr. Staman denied this, claiming he could not read English, and insisted that plaintiff had misrepresented to him the contents of the writing and that he signed it relying upon the misrepresentation. Plaintiff and defendant each retained a copy of the agreement.

After several months' effort, plaintiff found a purchaser for the farm, a Mr. Elmer E. Gray, and reported this fact to Mr. Staman. Mr. Staman raised some question as to Mr. Gray's financial responsibility, whereupon plaintiff offered to guarantee the sale. A few days later, according to plaintiff's testimony, they discussed the terms of the mortgage to be taken for the deferred payment, and it is plaintiff's claim that Mr. Staman then agreed that a five-year mortgage would be all right, though expressing a preference for

a ten-year mortgage. Mr. Staman in his testimony does not refer to this specifically, but from his version of the transaction it is to be inferred that it is his claim that no such interview took place. Plaintiff further testified that he then told Mr. Staman that, in order to obviate the question of Mr. Gray's financial responsibility and as to the amounts and times of payments, he (plaintiff) would guarantee the transaction by taking the deed in his own name and giving his own note and mortgage for the deferred payment, payable in five years, and that he would re-sell to Mr. Gray upon such terms as Mr. Gray might see fit or be able to make. Mr. Gray was a witness and testified that he had offered to buy the farm at the price of $100 per acre, with a cash payment of $3,000, balance at 5%, secured by mortgage, and that the papers for the transaction between plaintiff and himself were prepared and left with his attorney. On the 9th of October, plaintiff made a tender of $3,000 in cash, his note for $18,330 payable 5 years after date with interest at 5% per annum, and a committee form mortgage bearing even date with and collateral to said note, covering the said farm property, and requested Mr. Staman to execute and deliver a deed of said farm to plaintiff. Defendant refused to accept the tender or to execute the deed. The tender was made on the basis of the price of $90 per acre specified in the agreement. In this suit plaintiff claims the sum of $10 per acre as the commission specified in the agreement, and the jury returned a verdict in his favor of $2,537.85.

The defendants rely upon the following grounds for reversal.

1. That the agreement sued upon is void under the statute of frauds;
2. That there was a variance between the damages alleged and the damages proved;
3. That error was committed in permitting the

plaintiff to give testimony relative to the increase in the value of the property up to the time of the trial.

In support of the first proposition counsel for appellants argue that the memorandum, to be sufficient under the statute of frauds, must be complete in itself, and leave nothing to rest in parol; that the writing in question does not show in all respects upon what terms the defendants would be willing to sell, in that it does not state when and how he would require the balance of the purchase price to be paid; that these terms are left to future negotiations; and that it is just such uncertainties as this that the statute sought to avoid. After a careful consideration of the question, we think counsel are right in this contention. The provision of the statute here applicable (section 11981, 3 Comp. Laws 1915) is as follows:

"In the following cases specified in this section every agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized, that is to say:
*   *   *
"5. Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate."

In cases arising under other subdivisions of this section (see *Hall* v. *Soule*, 11 Mich. 494; *Ayres* v. *Gallup*, 44 Mich. 13; *Baumann* v. *Lumber Co.*, 94 Mich. 365; *Palmer* v. *Rolling Mill Co.*, 32 Mich. 274; *James* v. *Muir*, 33 Mich. 223; *McElroy* v. *Buck*, 35 Mich. 434), as well as in cases arising under the section of the statute of frauds relating to contracts for the leasing or sale of lands (see *Gault* v. *Stormont*, 51 Mich. 638; *Webster* v. *Brown*, 67 Mich. 331; *Messmore* v. *Cunningham*, 78 Mich. 623; *Ebert* v. *Cullen*, 165 Mich. 75; *Harris* v. *Brown*, 172 Mich. 164; *Hilberg* v. *Greer*, 172 Mich. 505; *Nichols* v. *Burcham*, 177 Mich. 601),

this court has consistently held that, in order to make a contract or agreement valid under the statute, the written memorandum thereof must be complete in itself and show all the terms of the contract, and that no resort may be had to parol evidence to add to the contents of the writing, and further, that in the case of contracts for the sale of land, the time of payment as well as the price is an essential element and must be specified. This rule has not been regarded by this court as confined to certain particular sections and subdivisions of the statute, to which it has been applied for special reasons peculiar to each, but rather has been considered as applicable to all under the same general underlying principle. Decisions under the various sections have been cited indiscriminately in support of the ruling under any one of the other subdivisions. It is true that subdivision 5, above quoted, is a recent amendment to the statute, having been added by Act No. 238 of the Public Acts of 1913, but in the recent case of *Paul* v. *Graham*, 193 Mich. 447, we had occasion to consider its status and effect, and there held that the rule in question applies equally to this subdivision. In the course of his opinion in that case, Mr. Justice BIRD, speaking for this court, after calling attention to certain omitted terms or elements of the contract there in question, said:

"These are important elements, and if we are to overlook them and say that proof of the bare fact that some commission was to be paid is a compliance with the statute, and permit parol proof to make a completed contract, the effect which was obviously intended by the legislature is set at naught, and the controversies which the passage of the act was sought to avoid will still be with us. We think this subdivision 5 should be subject to the same construction that has been given the other subdivisions so far as it is applicable."

It is the claim of counsel for appellee, however, that

*Paul* v. *Graham* is not conclusive as to the point involved in the instant case. It is urged that the purpose of the legislature in adding this subdivision was to prevent claims for commissions by those who had never in fact been employed to make a sale, and that the essential thing required is to have the fact of the employment of the agent and the agreement to pay him a commission for his services expressly set forth in writing, but that it was not the intention, and that there is no purpose to be subserved, in requiring the details of the sale for which the commission is claimed to be set out in full in the commission agreement. Counsel insist that this view has been taken by the courts of other jurisdictions in construing similar statutes and cite, among other decisions, the case of *Morton* v. *Gaffield*, 51 Ind. App. 28, from which certain passages are quoted in their brief. In that case all the terms and elements of the agreement were set out in writing, but the description of the property to be sold was rather vague. The court held, however, that it sufficiently identified the land for the purposes of a suit for a commission. That the general trend of the decisions of the Indiana courts does not sustain the position taken by counsel will appear by reference to a case in the preceding volume of the same reports, *Olcott* v. *McClure*, 50 Ind. App. 79, in which the court said:

"Said section governs the contract sued on, and the supreme court has said that the same must be strictly construed, in that there must be no doubt as to the existence of such written contract and no dispute as to its contents or provisions. Citing *Provident Trust Co.* v. *Darrough*, 168 Ind. 29."

And again:

"If the writing contains matter sufficient to enable the court to ascertain the subject matter and the terms and conditions of the obligation or contract to which the parties intended to bind themselves, it is sufficient."

And further:

"Appellee in his brief says: 'The primary question is whether the correspondence shows an agreement, upon which the minds of the parties met, as to description, terms, price, and commission, or whether the negotiations are inchoate and unperfected until something should intervene and be determined in order to give it full effect.' See *Everitt* v. *Bassler*, 25 Ind. App. 303. We think the test here furnished a proper one."

The decision of the Indiana supreme court in *Provident Trust Co.* v. *Darrough*, above cited, contains the following:

"In an action for commissions against the owner of real estate sold, a substantial compliance with the terms of the statute will be required," citing *Zimmerman* v. *Zehendner*, 164 Ind. 466; *Beahler* v. *Clark*, 32 Ind. App. 222.

In *Zimmerman* v. *Zehendner* the contract provided for compensation to the agents "to the amount that has been and is now understood." The court said:

"The compensation is to be the amount 'understood,' but by whom is not stated. In short, the contract, in so far as it relates to this action, is only partially in writing. The important feature—the amount of commission to be paid—is to be ascertained by parol testimony in regard to an understanding which may prove to be a misunderstanding, the exact thing which the statute was designed to prevent. A contract partly written and partly verbal is a parol contract, and contracts required by law to be in writing must be wholly written to be enforceable."

The other case cited, *Beahler* v. *Clark*, held that where there was a contract for a commission invalid under the statute, there could be no recovery under a *quantum meruit*.

On the argument, our attention was also called to the case of *Henderson* v. *Lemke*, 60 Or. 363, as supporting appellee's position. The situation in that case,

however, was very different from the one now before us. The employment there was to "show" defendant's property, and the agreement was that if any one to whom plaintiff had shown the property should purchase it, the defendant would pay a commission at a fixed rate. Under such an arrangement, of course, the selling price and terms of sale were immaterial, for the sale was to be made by the owner, not the agent, and unless a sale was made, there was no commission, and if a sale was made, the commission was on the selling price. There was nothing indefinite or open to dispute. The terms of the contract showed clearly when the commission was earned and how it was to be computed.

It seems to us clear that, in all the varying situations which may arise under these commission, contracts, the true test to determine whether or not the contract sufficiently complies with the statute, is this: Does the written contract or memorandum, by its terms, without the necessity of resorting to any supplemental oral agreement or understanding, furnish a definite basis for determining when the commission has been earned, and the amount thereof? If at a certain point in the transaction it can be shown by the very terms of the written contract that the thing to be done has been fully performed, and the reward to be paid therefor can be definitely ascertained, then the contract is valid. If some parol agreement or understanding as to a portion of the arrangement would have to be shown before such result could be reached, then the contract is void.

Applying this test to the case at bar, one element—the method of calculating the commission—is clearly set forth. But when is it earned? When the agent makes a sale of the farm therein described at a price over $90 per acre on the terms of $3,000 cash and the balance, with interest at 5%, to be payable—how

and when? Here the contract fails to aid. Whether the balance is to be payable in one year or one hundred years, whether in a lump sum or in instalments, whether secured or unsecured, whether the interest is to be payable semi-annually, annually, or not till the principal becomes due, are important elements that do not appear. Plaintiff seeks to avoid this difficulty by showing a verbal understanding as to these omitted terms, and thereby places himself outside of the rule of validity above set forth. By his own showing the contract was partly written and partly oral, and such a contract is void. Searching the four corners of the writing, no test can be found to determine beyond dispute at what point in the transaction a commission can be said to have been earned. "The negotiations are inchoate and unperfected" until something "intervenes and is determined to give it full effect."

Being, therefore, of the opinion that the contention of appellants' counsel, that the agreement sued upon is void under the statute of frauds, is sound, it becomes unnecessary to discuss the other grounds urged for reversal of the case.

The judgment should be reversed and no new trial granted, with costs to the appellants.

FELLOWS and STONE, JJ., concurred with KUHN, J.

OSTRANDER, C. J. The writing relied upon, in my opinion, is a promise to pay a commission for or upon a sale of real estate. So far as the statute of frauds is concerned, no more is required. Suppose that the seller, in this case, and the proposing buyer, produced by plaintiff, had agreed upon terms of payment and completed a sale and conveyance of the premises for $100 an acre. In an action for the commission, could the seller defend upon the ground that the promise to pay the commission was not in writing? I think not. And this, I think, is the test to apply, and not the one

whether the written agreement or promise contains also,—has incorporated therein,—all of the details necessary to be stated in an agreement to sell and convey real estate. In *Paul* v. *Graham,* 193 Mich. 447, it was decided that a particular writing did not satisfy the statute. But a written promise to pay a stated commission for the sale of described property, both of which elements, as the opinion points out, were lacking in the writing relied upon in that case, are present in the writing in this case. See, *Toomy* v. *Dunphy,* 86 Cal. 639.

"Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate,"

is the language of the statute. There need be no resort to parol evidence in this case to add to what the words of the promise import, if only we confine our attention to what it is that must be in writing in order to satisfy the law. If the decisions of the courts of Indiana are not in harmony with this view, and my examination of them has not convinced me that they are, we should decline to follow them.

The trouble in this case does not arise upon the appointment of plaintiff as selling agent, or the promise to pay him a commission, but upon whether plaintiff has earned a commission. Plaintiff was permitted, rightfully I think, to testify that the defendants agreed to accept a mortgage for deferred payments, running five years. According to this testimony, the defendant Herman Staman questioned the financial responsibility of the purchaser produced by plaintiff; rather, he asked plaintiff if he knew he was responsible. But plaintiff says that he then offered to guarantee the sale personally or, if defendant thought that he was himself good, offered to buy it in his own name and execute the notes and mortgage evidencing deferred payments. Defendant assured plaintiff that he re-

garded him as all right. Plaintiff prepared a deed of the property running to himself as grantee, executed the notes and mortgage according to the theory that $90 an acre was the purchase price and tendered them and $3,000 to defendants and the tender was refused. The reason given for the refusal was that the farm was worth more. The jury found the facts to be as plaintiff claimed them to be.

It is said by appellants there is a fatal variance between declaration and proofs, which contention is rested upon the ground that the action is brought to recover a commission of $10 an acre on the sale of 237 acres of land, plaintiff having produced a purchaser able, ready and willing to buy, while the proof is that plaintiff proposed to himself buy the land at $90 an acre and does not show any contract or agreement with any one for the sale of the land at a higher price. It is further contended that if an agreement for a resale at a higher figure had been proven it would make no difference because plaintiff is not entitled to a commission in that case, but, if damaged, his damages would be measured by the loss sustained by him in not being able to resell the land at a larger sum.

Counsel are mistaken in saying there is no evidence of a contract to sell the land at a larger sum. There is no written evidence, but plaintiff and the proposed purchaser both testify, in substance, that he, the purchaser, agreed to take the land from plaintiff for $100 an acre and that papers to that effect were drawn. Defendants do not upon the record dispute the fact that plaintiff produced a man able, ready and willing to buy the land for $100 an acre. If he did that, and defendants refused to proceed, plaintiff had earned the commission of $10 an acre. Such proof agrees with the declaration. If, to further satisfy the owner, plaintiff then proposed to himself purchase and secure deferred payments, but to turn the land over to his

purchaser, it does not seem that he should be held to have lost what he had already earned, nor that proof of these facts established a variance. The case is essentially different from *Jones* v. *Pendleton*, 134 Mich. 460, and other cases cited and relied upon by appellants. Here there is testimony which supports the allegations of the declaration. In corroboration of the testimony of plaintiff, to the effect that defendants refused to go on with the sale because the land was worth more, and in answer to the defense that defendants signed the contract relying upon false representations, plaintiff testified, over objection, that real estate values in the neighborhood had in fact increased and that at the time of the trial the farm was worth $250 an acre. It is said this testimony had no proper probative value for the purpose for which it was offered and was prejudicial because it tended to make the jury believe that by not carrying out the agreement defendants had profited largely. I am not satisfied that the testimony was incompetent for the purpose for which it was introduced. In any event, upon this record, and upon the merits, it appears that plaintiff earned his commission and, if this testimony ought to have been rejected, its admission was not so prejudicial to defendants that for its admission the judgment should be reversed.

MOORE, STEERE, and BROOKE, JJ., concurred with OSTRANDER, C. J. BIRD, J., did not sit.