Thomas C. BROWN and Ennis Realty
Company, Inc., Appellants
(Plaintiffs Below),

v.

Bernice POULOS, Appellee
(Defendant Below).

No. 3–479A117.

Court of Appeals of Indiana,
Third District.

Oct. 29, 1980.

James E. Foster, Hammond, for appellants.

Daniel G. Hoebeke, Charles L. Zandstra, Zandstra, Zandstra & Muha, Highland, for appellee.

HOFFMAN, Judge.

Plaintiffs-appellants Thomas C. Brown and Ennis Realty Company, Inc. (Realtor) brought an action against defendant–appellee Bernice Poulos (Landowner) for her failure to pay a broker's commission upon the exercise by Northwest Indiana Home Health Services–VNA, Inc. (VNA) of an option to purchase her real estate. In rendering judgment for the Landowner the trial court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

1. The Court has jurisdiction over the subject matter of this action, jurisdiction over the property involved and jurisdiction over all the parties.

2. That the Defendant, Bernice Poulos, was the owner of a certain parcel of real estate located on the S.E. corner of 165th and Kennedy Avenue, Hammond, Indiana. That said real estate more specific description was Lots 4 to 7, both inclusive, C.S. Ogden's Addition in the City of Hammond, as shown in Plat Book 11, page 6, in Lake County, Indiana.

3. That on or about the 18th day of June, 1974, Ernest Lambesis, on behalf of Bernice Poulos, executed an exclusive listing contract with Ennis Realty Co., Inc., for the sale of the property subject of this action.

4. That the listing agreement of June 18, 1974, granted an exclusive listing from the 20th day of June, 1974, to the 20th day of September, 1974. (Plaintiffs' Exhibit 1).

5. That on or about the 4th day of November, 1974, Ernest Lambesis, on behalf of Bernice Poulos, executed an extension of the listing contract, incorporating the terms thereof, granting an exclusive listing from the 4th day of November, 1974, to the 4th day of February, 1975. (Plaintiffs' Exhibit 2).

6. NORTHWEST INDIANA HOME HEALTH SERVICES–VNA, INC., (hereinafter 'VNA') was first introduced to the Defendant by the Plaintiffs during the period of time covered by the Exclusive Sales Agency Contract.

7. A contract for the outright purchase of the above–described real estate by VNA dated February 24, 1975, and accepted by Defendant on March 4, 1975, was never completed due to the inability of VNA to perform according to the contract terms.

8. That thereafter Ernest Lambesis, dealt directly with representatives of VNA and such dealings resulted in a lease with purchase agreement which was executed on the 14th day of May, 1975, and was received as Plaintiffs' Exhibit 4.

9. That the option to purchase was exercised by VNA on the 6th day of October, 1977, and acknowledged by defendant on the 10th day of October, 1977, as shown by Plaintiffs' Exhibit 5.

10. Defendant made no representations to any of the parties to this cause that she had given Ernest Lambesis any decision–making authority in regards to the above–described property and she therefore retained final authority for the sale and disposition of said property.

11. Plaintiffs introduced no written authorization from Defendant as required by IC 32–2–2–1 to enter into a valid 'Exclusive Sales Agency Contract' and said purported 'contract' was never signed by Plaintiff in the space provided for said signature.

12. Plaintiffs introduced no written authorization from Defendant as required by IC 32–2–2–1 to enter into a valid 'Extension of Listing.'

## "CONCLUSIONS OF LAW

The Court having made the above Findings of Fact numbered One (1) through Twelve (12), now states the following Conclusions of Law:

1. The law is with the Defendant and against the Plaintiffs.

2. Defendant never entered into a valid written authorization with the Plaintiff as required by law to sell the real estate involved herein.

3. Defendant never signed an 'Extension of Listing' authorizing Plaintiffs to sell the real estate involved herein.

4. Plaintiffs are not entitled to recovery of of [sic] any commissions herein."

Realtor contends the trial court erred in holding that IC 1971, 32–2–2–1 (Burns Code Ed.) requires the authority of an agent to enter into an exclusive listing agreement on behalf of his principal to be in writing. The statute under consideration provides:

"No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one [1] person of a purchaser for the real estate of another, shall be valid unless the same shall be in writing, signed by the owner of such real estate or his legally appointed and duly qualified

representative: Provided, That any general reference to such real estate sufficient to identify the same shall be deemed to be a sufficient description thereof."

Resolution of the question presented revolves around the interpretation to be ascribed to the phrase "or his legally appointed and duly qualified representative." Realtor insists that this phrase means agent. Landowner disagrees, suggesting that inasmuch as powers of attorney to convey interests in land must be in writing, so too the authority of an agent to enter into a listing agreement should be in writing.

While this issue appears to be one of first impression in Indiana, *Doney v. Laughlin* (1911), 50 Ind.App. 38, 94 N.E. 1027 furnishes a useful starting point.

"The object of the Legislature in enacting the statute requiring real estate commission contracts to be in writing was in general the same as that which led to the enactment of our statute of frauds, viz., to avoid frauds and perjuries, and the latter is especially for the protection of those selling real estate through agents, to avoid conflict as to who, if any one, is entitled to the commission, and definitely to fix the amount to be paid. In enacting the statute, the Legislature plainly provides that a contract for a real estate commission is invalid, or incapable of legal enforcement, unless in writing signed by the person obligated *or his authorized agent.*" (Emphasis added).

94 N.E. at 1028–29.

Clearly the *Doney* court considered the phrase in question as synonymous with agent. *See also: Provident Trust Co. v. Darrough* (1906), 168 Ind. 29, 78 N.E. 1030; *Day v. West* (1978), Ind.App., 373 N.E.2d 935.

The law in Indiana recognizes that an agency relationship can be created orally.

"The agency relationship arises from the consent of the parties, out of a contractual agreement between the parties, but it is not necessary that the contract or the authority of the agent to act be in writing.

"The question of whether the agency exists is ordinarily a question of fact which may be established as any other fact, either by direct or by circumstantial evidence. *Jasper County Farms Company v. Holden* (1923), 79 Ind.App. 214, 137 N.E. 618."

*Department of Treasury v. Ice Service, Inc.* (1942), 220 Ind. 64, at 68, 41 N.E.2d 201, at 203.

Plainly the trial court in Findings of Fact Nos. 3 and 5 found that Lambesis was the agent of Landowner for the purpose of entering into a listing agreement with Realtor. Nevertheless, it determined that the fact of this agency relationship was required to be in writing. This determination was erroneous.

 Statutes mandating contracts for the employment of brokers to be in writing are in derogation of the common law and should be strictly construed. *Selvage v. Talbott* (1911), 175 Ind. 648, 95 N.E. 114. There is nothing in the statute at hand to indicate that the Legislature intended to alter well-settled rules of agency by requiring that the agency be established by some written instrument. The operation of the statute will not be extended further than necessary to make its spirit and purpose effective. *Provident Trust Co. v. Darrough, supra.* The statute was enacted to protect the owners of real estate against the fraud of real estate agents, not to enable them to perpetrate fraud against such agents. *Olcott v. McClure* (1912), 50 Ind.App. 79, 98 N.E. 82. Thus, in the absence of a specific provision to the contrary an agent need not be authorized in writing to sign a contract for his principal to pay a commission for the sale of land. 37 C.J.S. Statute of Frauds § 213.

Supportive of this holding is *Kennedy v. Justus* (1958), 64 N.M. 131, 325 P.2d 716. There a broker sued a father and son for a commission allegedly due for procuring the sale of land owned by the father. The broker had been given a listing signed by the owner and son but the owner later denied the agency of the son. The statute governing such matters reads as follows:

"Real estate brokerage agreements required to be in writing.–Any agreement entered into subsequent to the first day of July, 1949, authorizing or employing an agent of broker to purchase or sell lands, tenements, or hereditaments or any interests in or concerning them, for a commission or other compensation, shall be void unless the agreement, or some memorandum or note thereof shall be in writing and signed by the person to be charged therewith, or some other person thereunto by him lawfully authorized. No such agreement or employment shall be considered exclusive unless specifically so stated therein. § 70–1–43, N.M.S.A. 1953, Compilation."

325 P.2d at 717.

The trial court held for the father and son, reasoning that the statute required the agent's authority to be conferred by writing. In reversing that judgment the New Mexico Supreme Court declared:

"It is apparent that the Court was persuaded that the statute in question requires not only a written listing or contract employing the broker, but also a writing, such as a power of attorney, to evidence the authority of the agent who lists property for an owner. We find this not to be a proper construction of the statute but conclude that such a listing is binding on the principal if the purported agent was in fact an agent for such purpose under the general law of agency, and such an agency may be created by parol or estoppel, and proven by circumstantial evidence."

325 P.2d at 718.

■ The statutes cited by Landowner, namely IC 1971, 32–1–2–5 (Burns Code Ed.), IC 1971, 32–1–2–32 (Burns Code Ed.) and IC 1971, 32–1–10–1 (Burns Code Ed.), do not compel a different result. In general, these statutes provide that powers of attorney to *convey* interests in land must be in writing. Obviously a listing agreement does not convey any interest in land. It is nothing more than an offer of a unilateral contract, the act requested being the procuring by the broker of a purchaser ready, willing and able to buy upon the terms stated in the offer. *Buckaloo v. Johnson* (1975), 14 Cal.3d 815, 122 Cal.Rptr. 745, 537 P.2d 865. Laws requiring written authorization of agents to enter into certain contracts relating to land do not apply to the execution of instruments not within their scope. 37 C.J.S. Statute of Frauds § 213. Accordingly, Landowner's reliance on the aforementioned statutes is misplaced.

■ For the reasons stated, the judgment of the trial court must be reversed and remanded with instructions to proceed in a manner consistent with this opinion. The argument advanced by Landowner, that the failure of the motion to correct errors to assert compliance with the terms of the listing agreement or the amount of commission owing thereunder waived any right to relief, is in error. The trial court decided the case on an erroneous theory, that is, that an agent's authority to bind his principal to a listing agreement was required to be in writing. Having so determined the trial court never reached the issues of compliance or damages. Thus remand is in order. *Citizens Nat'l. Bank v. Harvey* (1976), 167 Ind.App. 582, 339 N.E.2d 604; *Carsten et al. v. Eickhoff et al.* (1975), 163 Ind.App. 294, 323 N.E.2d 664. In essence Landowner would require the trial court to issue an advisory opinion as to what it would have found if it had felt obliged to consider the issues. Such is not the office of a motion to correct errors.

Reversed and remanded.

GARRARD, P. J., and STATON, J., concur.