PURDY *v*. LAW.

1. SALES—DEFINITION—WHAT CONSTITUTES A SALE.
   A sale is a parting with one's interest in a thing for a valuable consideration.

2. FRAUDS, STATUTE OF—BROKERS—COMMISSIONS—EXCHANGE OF PROPERTY—SALES.
   An exchange of property, where there was a fixed price for the property transferred by each party, was a sale of real estate within the meaning of the statute of frauds (3 Comp. Laws 1915, § 11981), requiring agreements to pay commission for or upon the sale of any interest in real estate to be in writing.

3. SAME—COMPLIANCE WITH STATUTE.
   The mere recital, in a written agreement for the exchange of real estate, that commission agreement between defendant and plaintiff has been agreed upon, without disclosing what that agreement was, *held*, not a compliance with the provisions of the statute of frauds, so as to entitle plaintiff to recover in an action therefor.

Error to Livingston; Collins (Joseph H.), J. Submitted October 7, 1920. (Docket No. 53.) Decided December 21, 1920.

Assumpsit by Jere T. Purdy against Fred C. Law for commissions on the sale of real property. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*William H. Shiek* and *Louis E. Howlett*, for appellant.

*Francis J. Shields*, for appellee.

STEERE, J. In February, 1919, plaintiff Purdy was and had been for some years engaged in the real estate

On power of legislature to require contracts for commissions for finding purchaser for real estate shall be in writing, see note in 33 L. R. A. (N. S.) 973.

On power of legislature to prohibit offering another's real estate for sale without written authority, see note in 12 L. R. A. (N. S.) 707.

On necessity that authority of agent to purchase or sell real property be in writing to enable him to recover compensation for his services, see note in 44 L. R. A. 601; 9 L. R. A. (N. S.) 933.

business in the city of Detroit. In the line of his business he assisted in a transaction by which defendant Law exchanged two lots located on Breckenridge street in the city of Detroit for a farm owned by Mrs. Crissman, located in Green Oak township, Livingston county. Purdy brought this action to recover from Law $420 for his services in bringing about the exchange, claiming a commission of 3% on $14,000, stated as the agreed valuation at which defendant's two lots were exchanged.

It appears that Purdy had talked with Law about his Breckenridge street lots and ascertained that he was desirous of disposing of them, and that he might be inclined if satisfactory opportunity presented itself to exchange them for farm property. Purdy also saw a notice in a Detroit paper that Mrs. Crissman owned a farm of 120 acres in Livingston county which she wished to exchange for property in the city of Detroit. After interviewing her on the subject he brought the two parties together and negotiations were had which resulted in the following written agreement between the contracting parties, drawn up by him:

"Detroit, Mich., Feb. 25, 1919.
"APPLICATION TO PURCHASE.
".............hereby apply to J. T. Purdy to purchase the following described property located in Green Oak township, Livingston county, Mich., owned by Mrs. Marie Crissman, consisting of 120 acres, more or less, for one thousand, and a further consideration lots 53 and 54, located south side of Breckenridge street, city of Detroit, known as Nos. 333-333½ and 335 Breckenridge street, city of Detroit, subject to mortgage of $2,600, which Mrs. Crissman assumes and agrees to pay.

"It is agreed that...........to receive a marketable abstract written to date, all taxes and assessments on this property paid each party, deal to be closed as soon as papers can be prepared, time not to exceed ten days from date.

"Further conditions of this application are.......
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Commission agreement between Fred Law and J. T. Purdy has been agreed upon.

"Terms, price and conditions of sale subject to the approval of J. T. Purdy.

"Mrs. Crissman assumes payment of $100 commission to J. T. Purdy.

"MARIE C. CRISSMAN   (L. S.)
"FRED LAW              (L. S.)"

This agreement was subsequently carried out by the contracting parties and the exchange completed by execution and delivery to each other of proper deeds. Plaintiff received a commission of $75 from Mrs. Crissman. Of the transaction Purdy testified in part:

"I also was attending both parties, made this agreement for both parties, that is, I was representing both Mrs. Crissman and Mr. Law. I advised Mr. Law to make her a proposition giving her $1,000, the difference between his equity and her farm. The deal was consummated on that basis. That accounted for him paying her $1,000. I brought the parties together and was authorized by Mrs. Crissman to exchange her farm and by Mr. Law to exchange his city property."

Mrs. Crissman paid him a commission, in relation to which he said:

"The reason that I could take her money for assisting her in the deal and yet advise the man she was dealing with to increase his property valuation $1,000 was that she has already inflated her valuation; it was not a crooked deal, but an inflated deal. I know I was justified in taking $75 of Mrs. Crissman's money and then advising the man who was selling his property to her to inflate the valuation of his property $1,000. I know it is fair and honest. It was a matter of right between the parties to take the commission both ways and I knew that I could advise one party or the other to increase their valuation and it would be fair and honest deal."

Other than as appears in the contract quoted there was no written agreement between any of the parties as to a commission to plaintiff. Asked why he did not have a written agreement with defendant about a commission, he replied:

"The reason I did not embody it in the agreement was that I had too much confidence in Fred Law to put it in an agreement."

Differences arose between these parties on the subject of a commission and, Law refusing to pay the amount Purdy claimed, this action was brought.

It was the opinion of the trial court that there was no agreement in writing which took the claim out of the statute of frauds, that whatever understanding or agreement may have been had between the parties rested entirely in parol and was void under section 11981, 3 Comp. Laws 1915, which so far as material here provides as follows:

"In the following cases specified in this section, every agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized, that is to say: * * *

"5. Every agreement, promise or contract to pay any commission for or upon the sale of any interest in real estate."

The questions raised and argued in counsel's brief are whether or not the statute of frauds applies to the facts in this case and, if so, are the terms of the written agreement sufficient to meet its requirements?

Upon the first proposition it is urged by plaintiff's counsel that the statute is only applicable to agreements, promises or contracts to pay a commission upon a *sale* of real estate, which would not apply to a promise to pay for services in helping to make an exchange of realty.

To this point it is argued that the statute invoked by defendant is in derogation of the common law and should be strictly construed; that a sale is founded on a money consideration and contemplates a transfer of property and the title thereto from one to another in consideration of money paid, or to be paid, by the vendee to the vendor, as distinguished from an exchange or barter, where one commodity or property is exchanged for another without involving any agreement as to price or money payment. Here there was a fixed price asked for the property transferred by each party and acceptance by the other, with a money consideration of $1,000 to Mrs. Crissman for her farm "and a further consideration" of the two city lots conveyed to her at the agreed valuation.

"A sale is a parting with one's interest in a thing for a valuable consideration. This is what is generally understood by the word, and in every sale there is a transfer or change of title from the vendor to the vendee." *Western Mass. Ins. Co.* v. *Riker*, 10 Mich. 279.

Still more directly in point, it is said in *Huff* v. *Hall*, 56 Mich. 456:

"The claim that a transaction is not a sale where the consideration is land and not money, is no better founded. * * * But every transfer of property for an equivalent is practically and essentially a sale, and the deed of bargain and sale is almost universally used to convey lands so transferred. Money's worth is a valuable consideration, as much as money itself. If the parcels are honestly valued, the value agreed upon may be usually assumed as the price."

The innominate mixture of provisions which plaintiff wrought when filling out his form entitled "Application to Purchase" to his liking, is a somewhat confusing apology for an agreement between contracting parties for sale or exchange of real estate; but the subscribing parties consummated the deal it referred

to, and its other provisions, including "the approval of J. T. Purdy," are material only for their bearing on the interjected announcement that "Commission agreement between Fred Law and J. T. Purdy has been agreed upon," now claimed by Purdy to be a "note or memorandum" in writing adequate to satisfy the statute of frauds.

It is undisputed that the claimed commission agreement agreed upon was not in writing. Purdy testified, under objection, that it was made on the street "in the summer two or three years ago," at his first meeting with Law, saying: "On the first day I ever met him, within ten minutes after I saw him, we talked three per cent., but that was a year before I inflated the price." He did not, however, care to embody that oral agreement made "two or three years ago" in the written instrument he drew up on February 25, 1919, because, as he stated, he "had too much confidence in Fred Law" to do so. He explained that he inserted the reference to it now relied on at the suggestion of Mrs. Crissman, whose assumption of a commission to him of $100 he took pains to insert. As he tells it, he had been in the real estate business for 11 years, drew up the papers himself, had in mind his oral agreement for a commission with Law, intentionally omitted to put any note or memorandum of what it was in writing, and only made the scant reference to it appearing in the instrument he drew because Mrs. Crissman suggested it. It cannot be said that its omission was an oversight, or assumed that with his experience as a real estate agent he did not know what was required to entitle him to an enforceable right to a commission under the law on that subject.

The provisions of the statute have been discussed and construed as applied to the facts there involved in *Paul* v. *Graham*, 193 Mich. 447; *Cochran* v. *Staman*, 201 Mich. 630. In the latter case, referring to the

former, it was said in the controlling opinion by Chief Justice OSTRANDER:

"But a written promise to pay a stated commission for sale of described property, both of which elements, as the opinion points out, were lacking in the writing relied upon in that case, are present in the writing in this case."

In the instant case there is nothing but a bare statement that an agreement, admittedly oral, had "been agreed upon."

What that agreement was remained in parol dependent for its verification on the memory and veracity of interested witnesses, to eliminate which was the express object of the act requiring a "note or memorandum" of its essentials to be in writing.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.